**In the Matter of Lammot duPont COPE-LAND, Jr., Debtor.**

**No. BK 70-94.**

United States District Court,
D. Delaware.

Nov. 11, 1974.

See also D.C., 350 F.Supp. 943, 391 F.Supp. 134.

E. Norman Veasey, R. H. Richards, III, Richard G. Elliott, Jr., Richards, Layton & Finger, Wilmington, Del., for debtor-in-possession.

Francis X. McLaughlin, Washington, D. C., James P. D'Angelo, Wilmington, Del., for C. J. Pappas.

Richard K. Herrmann, Bayard, Brill & Handelman, Wilmington, Del., Leon S. Forman, Wexler, Weisman, Maurer & Forman, P. C., Philadelphia, Pa., Stuart R. Wolk, New York City, Arthur E. Neuman, Washington, D. C., for Crown Financial Corp.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

Disparate issues presented by formal objections [1] to Confirmation of a Plan in this Chapter XI proceeding are: (1) Whether Section 376(2), 11 U.S.C. § 776(2), of the Bankruptcy Act requires dismissal or adjudication where the Debtor does not file a Statement of Executory Contracts within the time fixed by the Court pursuant to Section 324 of the Bankruptcy Act, 11 U.S.C. § 724, and (2) whether the Court has jurisdiction to determine dischargeability of debt issues.

### I. THE STATEMENT OF EXECUTORY CONTRACT ISSUE [2]

A brief statement of the factual background is essential to an understanding of this Objection to Confirmation and its resolution.

On October 20, 1970, the Debtor filed a Petition for Arrangement. On the same date Debtor was granted a ten day extension in which to file his Statement of Affairs, Schedules and a Statement of Executory Contracts which was thereafter successively extended upon application and order to November 9, 1970, and November 12, 1970.

---

1. Creditor C. J. Pappas filed the Objection to Confirmation predicated upon the alleged failure to file a Statement of Executory Contracts, and creditor Crown Financial Corporation objected to Confirmation of the Plan because of inclusion within the Plan of a condition that this Court retain exclusive jurisdiction over the determination of dischargeability of any debt.

2. The identical issue presented as an Objection to Confirmation was determined adversely to the same creditor-claimant by denial of a Motion to Dismiss under Section 376(2) of the Bankruptcy Act, 11 U.S.C. § 776(2). Docket # 1173 pp. 55–68; docket # 1150.

1282

On November 12, 1970, the Debtor filed the Statement of Affairs and the Schedules, but did not file a Statement of Executory Contracts.

On November 15, 1972, Pappas, the claimant in this action, filed a proof of claim in the amount of $496,000, predicated upon the Debtor's breach of agreement to purchase from Pappas, at the request of Pappas, 31,000 shares of Transogram Stock at $16 per share (hereinafter referred to as a "put contract").

On December 13, 1972, the claimant, Pappas, amended his proof of claim to $992,000. The amendment was caused because the contract provided in effect for the exercise of another put contract on November 30, 1972, for another 31,000 shares at $16 per share.

On April 17, 1973, at a hearing for an extension of time in which to file a Plan, the Court inquired and expressed concern as to whether a Statement of Executory Contracts had been filed. Counsel for the Debtor adequately explained why the Statement of Executory Contracts had not been filed and advised a Statement of Executory Contracts was being prepared.

On April 23, 1973, the Debtor filed a Statement of Executory Contracts with notice to and consent of the Creditors' Committee and with the approval of the Court. The Statement of Executory Contracts contained five separate put contracts including that of the claimant, Pappas, and one real estate easement agreement that required the payment of one dollar per year to the Reading Company by the Debtor for use of land adjacent to Debtor's land.

On May 7, 1973, the Debtor filed an application with notice to all affected parties for permission to assume the real estate easement contract and reject all of the put contracts. At a hearing held on June 5, 1973, the appearing creditors, including Pappas, and the Debtor requested time in which to research and brief the issue of whether the put contracts were executory con-

tracts. In addition, counsel for the appearing creditors wanted more time to assess their entire legal positions. On June 7, 1973, the Court entered an order authorizing rejection of one of the put contracts, namely, the Keenan put contract, and the assumption of the one dollar per year easement contract. The Court took no action with respect to the remainder of the put contracts.

On October 3, 1973, Pappas filed a Motion to Dismiss the entire Chapter XI proceeding because of the Debtor's alleged failure to timely file the Statement of Executory Contracts. That motion was denied after briefing and oral argument on August 21, 1973. Its content has been resurrected by the Pappas Objection to Discharge.

While not expressly stated, it is assumed the creditor-claimant seeking dismissal does so under Chapter XI Rule 11–38(e) which incorporates by reference a requirement that the Debtor has complied with the provisions of Chapter XI. The creditor, Pappas, asserts there has not been compliance with the Bankruptcy Act. He starts with Section 324 of the Bankruptcy Act, 11 U.S.C. § 724(1) which provides:

Sec. 324. The petition shall be accompanied by—

(1) a statement of the executory contracts of the debtor, and the schedules and statements of affairs, if not previously filed: *Provided, however,* That if the debtor files with the petition a list of his creditors and their addresses and a summary of his assets and liabilities, the court may, on application by the debtor, grant for cause shown further time, not exceeding ten days, for filing the statement of the executory contracts and the schedules and statement of affairs, and such time shall not further be extended except for cause shown and on such notice and to such persons as the court may direct; . . ..

Pappas reasons that since the Debtor failed to file his Statement of Executory Contracts on November 12, 1970, and re-

ceived no extension to file at that time, Section 376(2), 11 U.S.C. § 776(2), mandates adjudication or dismissal of the entire proceeding. Section 376(2), 11 U.S.C. § 776(2), states:

Sec. 376. If the statement of the executory contracts and the schedules and statement of affairs, as provided by paragraph (1) of section 324 of this Act, are not duly filed, . . . the court shall—

\* \* \* \* \* \*

(2) where the petition was filed under section 322 of this Act, enter an order, upon hearing after notice to the debtor, the creditors, and such other persons as the court may direct, either adjudging the debtor a bankrupt and directing that bankruptcy be proceeded with pursuant to the provisions of this Act or dismissing the proceeding under this chapter, whichever in the opinion of the court may be in the interest of the creditors . . . .

Pappas, failing to identify any pecuniary loss [3] and acknowledging he had notice and appeared at the hearing on rejection of his Executory Contract, complains that he received no notice pursuant to Section 324(1), 11 U.S.C. § 724(1), of the filing of the Statement of Executory Contracts and that he is entitled to adjudication or dismissal of the entire proceeding as a matter of law.

■■ The Pappas position is without merit.[4] While no case on point was found, analogous statutory provisions, treatise views expressed in Collier on Bankruptcy, analogous case law, and the Bankruptcy Rules are helpful.

Under Section 376, 11 U.S.C. § 776, if the statutory deposit is not timely made,

9 Collier on Bankruptcy, § 10.02[5] (14th ed. 1972) or the application for confirmation is not timely made, *id.* § 10.02[6], the Court can extend the statutory time or that previously fixed by the Court upon application made pursuant to Section 313(3), 11 U.S.C. § 713(3), after the original time has expired. "In each of the situations specified by Section 376, 11 U.S.C. § 776, as a ground for relief thereunder, the court has power by extending time or by other appropriate action to remove the 'default' and thereby remove the ground for relief." 9 Collier on Bankruptcy § 10.04[1] (14th ed. 1972). Debtor's default was removed on April 23, 1973, by his filing, with notice to the Creditors' Committee, of the Statement of Executory Contracts subsequent to Debtor's showing of good cause at the hearing on April 17, 1973.

In Thummess v. Von Hoffman, 109 F.2d 291 (3rd Cir. 1940), the Circuit Court considered a provision of the Bankruptcy Act which provided a petition for review of a referee's order may be filed "within ten days after the entry thereof or within such extended time as the court may for cause shown allow." The non-prevailing party, in a position similar to that of Pappas, urged that the petition for review was untimely since not made within the statutorily prescribed time period. The Circuit Court held that an extention of time may be granted upon an application made after the expiration of the mandated time period. Pappas has advanced no good reason why Thummess v. Von Hoffman should not be followed.

While the Bankruptcy Rules were not in effect in April, 1973,[5] they nonethe-

---

3. Docket # 1173 at pp. 5–10, 28–29, 33.

4. Because of the procedural posture in which the matter has arisen, there are certain aspects of the creditor-claimant position which are not considered or ruled upon at the present time. Specifically, no determination is made as to whether the Pappas put contract is an executory contract and whether, if executory at the time of the filing of the petition, it remained executory at the time

Debtor filed his application to reject the Pappas put contract.

5. The effective date of the Chapter XI Rules was July 1, 1974, while the effective date of Bankruptcy Rule 906(b) was July 1, 1973. The Rules are made applicable to all pending actions and therefore controlled on the Pappas Motion to Dismiss and are applicable in the instant Objection to Confirmation.

less do supply guidance. The Pappas position is expressly repudiated by Bankruptcy Rule 906(b)(2) which permits an act to be done after the expiration of the specified period, where the failure to act was the result of excusable neglect. The Debtor's failure to timely file the Statement of Executory Contracts was both excusable and understandable when viewed in the context of the still unresolved question of whether the Pappas put contract is an executory contract. Further, the procedure followed in April, 1973, about which Pappas now complains, tracks the procedure set forth in Chapter XI Rule 11–53.[6]

The Pappas Objection to Confirmation is denied.

## II. JURISDICTION TO DETERMINE DISCHARGEABILITY OF DEBT ISSUES

The question presented is whether this Court [7] should determine dischargeability of debt and issue an appropriate injunction in a Chapter XI proceeding filed prior to the effective date of the Dischargeability Act [8] which amended the Bankruptcy Act in 1970.

Crown Financial Corporation (hereinafter referred to as "Crown") has squarely posed the problem by 1) filing an application to modify an October 20, 1970 restraining order issued by the Bankruptcy Court under Section 314 of the Bankruptcy Act, 11 U.S.C. § 714, staying proceedings in all actions pending against the Debtor except suits to enforce liens, and by 2) filing an objection to confirmation of the Plan of Arrangement, alleging that certain provisions therein are not legally permissible.

The portions of the Plan to which Crown objects provide that the Court shall exercise exclusive jurisdiction in determining the dischargeability of debts. It further provides that the Court shall enter a permanent injunction staying and enjoining all suits, claims, demands or proceedings against the Debtor based upon causes of action arising prior to October 20, 1970, unless the Court determines that such claim is not barred by the discharge of the Debtor.[9]

■ Crown filed an action in the United States District Court for the Southern District of New York on September 4, 1970, against Winthrop Lawrence Corporation, based upon a promissory note, and against the Debtor as accommodation endorser and guarantor of said note. In November, 1970, judgment was entered against the Winthrop Lawrence Corporation in the amount of nearly $300,000. Crown now alleges that, based upon evidence disclosed in the course of the arrangement proceedings, it has developed a cause of action for

---

6. Chapter XI Rule 11–53 provides as follows:
 "When a motion is made for the rejection of an executory contract, including an unexpired lease, other than as part of the plan, the court shall set a hearing on notice to the parties to the contract and to such other persons as the court may direct."

7. This Chapter XI proceeding, filed October 20, 1970, was withdrawn from the Bankruptcy Judge and assigned to a District Judge by order dated May 2, 1974.

8. Public Law 91–467, 84 Stat. 990 (1970), effective December 18, 1970.

9. The Plan provides:
 VI. C. *Dischargeability Of Claims*
 As part of the order on confirmation the Court shall retain and exercise exclusive jurisdiction over the determination of the dischargeability of any debt and the Court shall enter a permanent injunction staying and enjoining all suits, claims, demands or proceedings of any kind against Debtor, arising prior to October 20, 1970, unless the Court shall have determined, after confirmation, upon application timely filed and after hearing thereon, that such claim is not barred by the discharge of Debtor. Local Loan Co. v. Hunt, 292 U.S. 234 [54 S.Ct. 695, 78 L.Ed. 1230] (1934).
 D. *Continuing Jurisdiction*
 After confirmation the Court shall continue to retain exclusive jurisdiction over these proceedings until the provisions of the Arrangement have been' fully performed for the following purposes:
 * * * * *
 3. Determining the dischargeability of certain debts if any creditor having standing makes timely application after confirmation;
 . . . .

fraudulent misrepresentation in connection with the extension of credit giving rise to the promissory note and Debtor's guarantee. If allowed to continue in its present New York suit against Debtor, Crown proposes to amend its complaint setting forth a count encompassing liability for obtaining money by false representation or in reliance upon a materially false statement respecting Debtor's financial condition. If established, a claim of this nature would clearly be non-dischargeable under Section 17 of the Bankruptcy Act, 11 U.S.C. § 35 (1970).

In urging this Court to determine issues of dischargeability of debt, Debtor relies upon the Bankruptcy Rules, Chapter XI Rules, and the doctrine of Local Loan Co. v. Hunt, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934) and its progeny. Crown replies the Bankruptcy Rules do not and cannot apply because the Rules only implement the Dischargeability Act which, by its terms, is inapplicable to the present proceeding. Crown also argues the Court does not have jurisdiction to determine the issue of dis-chargeability of debt and alternatively, if it does have subject matter jurisdiction, the Local Loan Co. v. Hunt doctrine informs that it should be used sparingly and as a matter of discretion should not be applied in the instant case.

In applying the uncontroverted facts to its legal position Crown points out that the instant case was filed on October 20, 1970, while the Dischargeability Act, amending the Bankruptcy Act, and approved on October 19, 1970, contained the following:

> Sec. 10. The provisions of this amendatory Act shall take effect on and after sixty days from the date of its approval and shall govern proceedings in all cases filed after such date.

Because of the above language, Crown correctly states the effective date of the Dischargeability Act as contained in that Act was December 18, 1970. It then reasons the Dischargeability Act should not be applied to the matter *sub judice*. Crown closes out its argument by urging the Bankruptcy Rules, particularly Bankruptcy Rule 409,[10] and Chapter XI Rule 11–48,[11] were intended to

---

10. Rule 409.

DETERMINATION OF DISCHARGEABILITY OF A DEBT; JUDGMENT ON NONDISCHARGEABLE DEBT; JURY TRIAL

(a) *Proceeding to Determine Dischargeability.*

(1) *Persons Entitled to File Complaint; Time for Filing in Ordinary Case.* A bankrupt or any creditor may file a complaint with the court to obtain a determination of the dischargeability of any debt. Except as provided in paragraph (2) of this subdivision, the complaint may be filed at any time, and a case may be reopened without the payment of an additional filing fee for the purpose of filing a complaint under this rule.

(2) *Time for Filing Complaint Under § 17c(2) of the Act; Notice of Time Fixed.* The court shall make an order fixing a time for the filing of a complaint to determine the dischargeability of any debt pursuant to § 17c(2) of the Act. The time shall be not less than 30 days nor more than 90 days after the first date set for the first meeting of creditors, except that if notice of no dividend is given pursuant to Rule 203(b), the court may fix such time as early as the first date set for the first meeting of creditors.

The court shall give creditors at least 30 days' notice of the time so fixed except that only 10 days' notice is required if notice of no dividend is given under Rule 203(b). Such notice shall be given to all creditors in the manner provided in Rule 203. The court may for cause, on its own initiative or on application of any party in interest, extend the time fixed under this paragraph.

\* \* \* \* \*

11. Rule 11–48.

DETERMINATION OF DISCHARGEABILITY OF A DEBT; JUDGMENT ON NONDISCHARGEABLE DEBT; JURY TRIAL

Bankruptcy Rule 409 applies in Chapter XI cases except that the court may but need not make an order fixing a time for filing a complaint under § 17c(2) of the Act. If such an order is made, at least 30 days' notice of the time so fixed shall be given to all creditors in the manner provided in Rule 11–24. The court may for cause, on its own initiative or on application of any party in interest, extend the time so fixed under this rule. If such an order is not made, a complaint to determine the dischargeability of a debt under clause (2), (4), or (8) of § 17a of the Act may be filed at any time.

implement the Dischargeability Act and therefore could have no application to a case filed prior to the effective date of the Dischargeability Act. It buttresses its argument by referencing the first sentence of the Advisory Committee note to Bankruptcy Rule 409 which states:

> This rule prescribes the procedure to be followed when a party requests the court of bankruptcy to determine dischargeability of a debt pursuant to § 17c of the Act. . . .

Implicit in the Crown position are two assumptions, both of which are incorrect: (1) the court had no jurisdiction to determine questions of dischargeability of debt prior to enactment of the Dischargeability Act; and (2) Section 10 of the Dischargeability Act had force and effect after adoption of the Bankruptcy Rules and Chapter XI Rules.

 The Bankruptcy Court has always had jurisdiction to determine the issue of dischargeability of debt.[12] The question has been not whether the Court had subject matter jurisdiction over dischargeability of debt questions but whether that jurisdiction should be exercised.[13] Passage of the Dischargeability Act answered that question in the affirmative with a Congressional directive that the pre-existing jurisdiction [14] be exercised.

> It should be emphasized that the power to determine dischargeability of a particular claim upon the application

of the bankrupt in the exceptional case presently resides in the bankruptcy court by virtue of the decision of the Supreme Court in Local Loan v. Hunt, 292 U.S. 234 [54 S.Ct. 695, 78 L.Ed. 1230] (1934). That power, however, under the guidelines laid down by the Supreme Court in the *Local Loan* case should not be exercised unless exceptional circumstances exist. Consequently, this bill will not effect any startling changes in the law. It will permit the bankruptcy court to do as a matter of course what it would otherwise do only where exceptional circumstances exist. Explanatory memorandum to accompany bill amending Sections 2, 15, 17 and 32 of the Bankruptcy Act, 116 Cong. Rec. 4156, 4163 (1970).

Since the Bankruptcy Court has always had subject matter jurisdiction over dischargeability of debt issues, Bankruptcy Rule 409 represents procedural implementation of that jurisdiction as well as procedural supplementation to Section 17(c), 11 U.S.C. § 35(c), of the Bankruptcy Act. The procedural implementation of dischargeability of debt jurisdiction through use of the Supreme Court's rule-making power [15] abrogated the Court's former doctrine found in Local Loan Co. v. Hunt [16] that a Bankruptcy Court exercise its dischargeability of debt jurisdiction only in "unusual circumstances." As a consequence, incorporation of Bankruptcy Rule 409 by

---

12. Bankruptcy Rule 928 incorporated by reference by Chapter XI Rule 11–63 has not been violated since jurisdiction over issues of Dischargeability of Debt pre-existed the Dischargeability Act as well as the Bankruptcy Rules and Chapter XI Rules.

13. "What has now been said establishes the authority of the bankruptcy court to entertain the present proceeding, determine the effect of the adjudication and order, and enjoin petitioner from its threatened interference therewith. It does not follow, however, that the court was bound to exercise its authority. And it probably would not and should not have done so except under unusual circumstances such as here exist." Local Loan Co. v. Hunt, 292 U.S. 234, 241, 54 S. Ct. 695, 697, 78 L.Ed. 1230 (1970). *See*

*also* Countryman, "The New Dischargeability Law", 45 Am.Bankr.L.J. 1 (1970).

14. The practice prior to passage of the Dischargeability Act was for the Bankruptcy Court to issue the discharge and the state court to determine its effect. Creditor abuse in the form of multiplicious litigation in state courts urging debts were not dischargeable under Section 17 of the Bankruptcy Act spawned Congressional reaction in the form of passage of the Dischargeability Act. *See* Countryman, *supra* note 13, at 17–23.

15. 28 U.S.C. § 2075.

16. 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934).

reference in Chapter XI Rule 11–48 [17] constitutes a directive that this Court determine issues of dischargeability as set forth in Bankruptcy Rule 409 independent of the 1970 Dischargeability Act amendments to the Bankruptcy Act.

Not only is the Crown position deficient because it ignores the fact that this Court had subject matter jurisdiction predating passage of the Dischargeability Act, but it also suffers from a fatal defect in that its entire theory is grounded upon the assumption that the Dischargeability Act is not applicable to the present matter by reason of Section 10 of that Act. The Congressional grant [18] of authority of rule-making power to the Supreme Court, 28 U.S.C. § 2075, envisioned that prior Congressional enactments might be in conflict with the Rules and expressly provided "All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect." The Supreme Court, pursuant to 28 U.S.C. § 2075, has liberally applied its rule-making power to supersede numerous provisions of the Bankruptcy Act.[19] Since, in the exercise of that rule-making power, the Supreme Court did not provide that Chapter XI Rule 11–48 and/or Bankruptcy Rule 409 should only be applied to cases filed after December 19, 1970 (the effective date of the Dischargeability Act), it must be concluded Section 10 of Public Law 91–467 was superseded on the effective date of the Chapter XI Rules. It is held Section 10 of Public Law 91–467 *was of no further force or effect in this proceeding after July 1, 1974, the effective date of the Chapter XI Rules.*

■ Crown's final argument, that application of the Chapter XI Rules to this proceeding would not be feasible or would work injustice within the meaning of paragraph 2 of the October, 1973, Order of the Supreme Court,[20] is without merit. Crown must demonstrate that application of the Bankruptcy Rules and Chapter XI Rules would not be feasible or would work injustice upon Crown.

■ The only "injustice" Crown can demonstrate is deprivation of its choice of forum. Weighed against loss of forum choice is this Court's knowledge

---

17. Adoption of Chapter XI Rule 11–48 incorporating Bankruptcy Rule 409 ended the academic controversy of whether the Congressional mandate to use pre-existing jurisdiction over dischargeability of debt extended to Chapter XI. *Compare* Foreman, "Application to The New Dischargeability Law of 1970 to Corporations and Chapter XI", 46 Am.Bankr.L.J. 105 (1972) (Dischargeability Act does not apply to Chapter XI) *with* Weintraub, "Dischargeability Amendments: Are They Applicable to Corporate Bankrupts and to Chapter XI?", 46 Am.Bankr.L.J. 115 (1972) (Dischargeability Act does apply to Chapter XI).

18. § 2075. Bankruptcy rules

The Supreme Court shall have the power to prescribe by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure under the Bankruptcy Act.

Such rules shall not abridge, enlarge, or modify any substantive right.

Such rules shall not take effect until they have been reported to Congress by the Chief Justice at or after the beginning of a regular session thereof but not later than the first day of May and until the expiration of ninety days after they have been thus reported.

All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect. Added Oct. 3, 1964, Pub.L. 88–623, § 1, 78 Stat. 1001.

19. "Rules promulgated pursuant to 28 U.S.C. § 2075 supersede laws, including provisions of the Bankruptcy Act, in conflict with such rules after they take effect." Collier, Bankruptcy Act and Rules A–369 (Pamphlet ed. 1974). The table of cross-references in Appendix II, *id.* A–843 et seq., while not official, "indicates the considerable number of provisions of the Act that . . . [are] . . . superseded or affected in some degree by the proposed rules." *Id.* A–369.

20. ". . . the aforementioned Chapter XI Rules and Official Chapter XI Forms shall take effect on July 1, 1974, and shall be applicable to proceedings then pending except to the extent that in the opinion of the court their application in a particular proceeding then pending would not be feasible or would work injustice, in which event the former procedure applies." Collier, Bankruptcy Act and Rules A–360.1 (Pamphlet ed. 1974).

that most, if not all, of the outstanding dischargeability questions share a central legal issue, i. e., whether Debtor's financial statements constitute false representations or materially false statements in writing respecting his financial condition within the meaning of § 17(a)(2) of the Bankruptcy Act, 11 U. S.C. § 35(a)(2). Existence of this central issue compels the conclusion that sound judicial administration requires dischargeability issues to be determined by this Court rather than in forums throughout the United States. The same witnesses and other documentary evidence would otherwise be necessary each time the issue was litigated. To decide otherwise would also open all parties to the danger of inconsistent results from one jurisdiction to the next. Determination of the dischargeability of debt issue in this Court also avoids a potential collateral estoppel problem and the undesirable uncertainty which would result from local law views of the collateral estoppel doctrine.[21]

The Court will determine issues of non-dischargeability of debt and, if and when appropriate, will issue an "Order Confirming Plan" which will be based upon Chapter XI Form 11–F 18 "with such alterations as may be appropriate to suit the circumstances." Chapter XI Rule 11–63 and Bankruptcy Rule 909. In implementating this holding, the Court will follow the procedure set forth in the Dischargeability Act,[22] Chapter XI Rules and Bankruptcy Rules. Absent compelling facts not now apparent, the scope of the discharge, injunction and effect on judgments will be no broader than that prescribed by the Dischargeability Act, Bankruptcy Rules and Chapter XI Form 11–F 18. To the extent the Plan is not consonant with the foregoing, Debtor must elect between adjudication and waiving and/or modifying the Plan as a prerequisite to the obtaining of an order of confirmation.

The approach employed in resolving this Objection to Confirmation, coupled with the Court's unwillingness to issue the injunction in the breadth requested by Debtor, makes unnecessary treatment of Debtor's theory predicated upon Local Loan Co. v. Hunt, *supra*.

---

21. *See, e. g.,* Bruszewski v. United States, 181 F.2d 419 (3rd Cir. 1950), cert. denied, 340 U.S. 865, 71 S.Ct. 87, 95 L.Ed. 632 (1950), for the rule applicable in the Third Circuit.

22. Pub.L.No. 91–467, 84 Stat. 990 (1970).