In the Matter of Lammot duPont COPELAND, Jr., Debtor.

No. BK 70–94.

United States District Court, D. Delaware.

March 25, 1976.

E. Norman Veasey, R. H. Richards, III, and Richard G. Elliott, Jr., Richards, Layton & Finger, Wilmington, Del., for debtor-in-possession.

William D. Bailey, Jr., Bayard, Brill & Handelman, Wilmington, Del., Leon S. Forman, Wexler, Weisman, Maurer & Forman, P. C., Philadelphia, Pa., Stuart R. Wolk, New York City, Arthur E. Neuman, Washington, D. C., for Crown Financial Corp.

Edward B. Maxwell, 2nd, Young, Conaway, Stargett & Taylor, Wilmington, Del., Joseph F. Colantuno, Morrato, Gueck & Colantuno, P. C., Denver, Colo., for Peoples Bank & Trust Co.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

This Chapter XI proceeding is presently before the Court on the issue of whether a right to jury trial attaches to a federal court determination of the dischargeability of a debt pursuant to section 17a of the

Bankruptcy Act. 11 U.S.C. § 35 (1970).[1] The question arises in the following factual setting.

An Order Confirming Plan of Arrangement filed on November 12, 1974, released the debtor, Lammot duPont Copeland, Jr., from all dischargeable debts except those theretofore or hereafter determined by order of this Court to be nondischargeable . . . ." Subsequently, two creditors, Peoples Bank and Trust Company ("Peoples") and Crown Financial Corporation ("Crown") filed separate Complaints to Determine Dischargeability of Debt ("Dischargeability") pursuant to Chapter XI Rule 11–48 which incorporates Bankruptcy Rule 409. The Complaints alleged that the respective claims were non-dischargeable under section 17a(2) of the Bankruptcy Act[2] and contained a demand for jury trial without specification of the issues to be tried by a jury.

The Answer to Peoples' Complaint incorporated, *inter alia*, various denials and affirmative defenses concerning prior discharge of and lack of consideration for the creditor's asserted claim. The Answer to Crown's Complaint also denied certain of the creditor's allegations and asserted an affirmative defense that the debt was "not justly and truly owing on the ground that . . . [it] was procured by negligence or actual or constructive fraud . . . ."

Both of the debtor's motions requested that the jury demands be stricken "in that there is no right to a jury trial on the issue of dischargeability." The parties have since submitted briefs and presented oral arguments on the question underlying the debtor's motion to strike the jury demands.[3]

Section 17c of the Bankruptcy Act was passed as part of the Dischargeability Act, Pub.L.No.91–467, 84 Stat. 990 (1970). Section 17c(1) provides that an application for the determination of the dischargeability of any debt shall be heard by the Bankruptcy Court, while section 17c(3) mandates that "if any debt is determined to be nondischargeable, [the court] shall determine the remaining issues. . . ." Section 17c(5) states that:

> "Nothing in this subdivision [c] shall be deemed to affect the right of any party, upon timely demand, to a trial by jury where such right exists."

Ascertaining "where such right exists" as employed in section 17c(5) is at the heart of the present controversy. The debtor, opposing jury trial on the issue of dischargeability, asserts the concept of dischargeability as created by the 1970 Amendment to the Bankruptcy Act was unknown and hence no "such right exists" under section 17(c)(5) of the Bankruptcy Act nor could it be an "issue triable of right by a jury" under Bankruptcy Rule 409.[4]

---

1. This Court has previously held that the Dischargeability Act, Pub.L.No.91–467, 84 Stat. 990 (1970), was applicable to the instant litigation and that it therefore had jurisdiction to determine the issue of dischargeability of debt even though this Chapter XI proceeding had been filed prior to the effective date of the Dischargeability Act. *In re Copeland*, 388 F.Supp. 1280 (D.Del.1974), *aff'd*, 517 F.2d 1397 (3d Cir. 1975).

 Statutory citations will hereafter reference section numbers as found in the Bankruptcy Act rather than those designated in the official codification.

2. Section 17a(2) of the Bankruptcy Act provides:

 "a. [A] discharge in bankruptcy shall release a bankrupt from all of his provable debts, . . . except such as . . . (2) are liabilities for obtaining money or property by false pretenses or false representations, or for obtaining money or property on credit or obtaining an extension or renewal of cred-

it in reliance upon a materially false statement in writing respecting his financial condition made or published or caused to be made or published in any manner whatsoever with intent to deceive. . . ."

3. Crown and Peoples are presently before the Court in sharply differing postures in that Peoples, unlike Crown, has never filed a proof of claim in this case. The practical ramification of the different tactical approaches is two-fold: 1) Peoples, by not submitting a proof of claim, has avoided a theoretical and possibly actual in personam jurisdiction (section 17 of the Bankruptcy Act), but in doing so, has 2) given up all of its right to participate in the Arrangement.

4. "(c) *Jury Trial.* Either party may demand a trial by jury of any issue triable of right by a jury by serving on the other party and filing a demand therefor in writing at any time after the filing of a complaint under this rule and not later than 10 days after the service of the last pleading directed to such issue. . . ."

The two creditors have adopted variant positions in urging their right to jury trial. Crown, citing *Transport Indemnity Co. v. Hofer Truck Sales,* 339 F.Supp. 247 (D.Kan. 1971), and recognizing that the concept of dischargeability as statutorily enacted in the 1970 Amendment to the Bankruptcy Act was theretofore unknown, concedes it has no right to jury trial on the sole issue of dischargeability. However, Crown then posits that all the factual findings necessary to a determination of dischargeability of its debt are similar to some of those involved in determining the debtor's liability on Crown's asserted claim. Crown then reasons a Court determination without benefit of a jury will therefore simultaneously result in foreclosure of jury determination of some issues and worse, might result in a decision on the merits of its claim. From this conclusion Crown argues that its right to jury trial on the merits can only be preserved if all factual determinations are left for the jury. Finally, Crown recognizing its impingement upon its earlier concession of no right to jury trial, suggests that a jury be empaneled to hear the facts simultaneously with a judge. Division of responsibility as fact-finders between judge and jury on the dischargeability issue was never clearly delineated in a manner consistent with Crown's concession.

Peoples takes a different stance in its interpretation of section 17c(5). It argues that section 17c(5) is meant to preserve the same jury trial right which formerly pertained in the analogous state proceedings [5] which included the jury passing upon the effect to be accorded the discharge. To buttress its position Peoples relies upon *In re Law Research Service, Inc..*[6] Bankruptcy Rule 409(c) and its accompanying Advisory Committee Notes. Rule 409(c) sets out the procedure to be followed in obtaining a jury trial "of any issue triable of right by a jury . . . ." The Advisory Committee states that 409(c) "preserves the right to jury trial where it exists under nonbankruptcy law . . . ." To Peoples this statement represents a declaration that the implementation of section 17c was not to work any change in the status quo as it had existed in the state courts. Moreover, it asserts that the spate of cases [7] which have interpreted the Dischargeability Act in a contrary fash-

---

**5.** Prior to the passage of the Dischargeability Act, dischargeability as a distinct concept did not exist in federal bankruptcy law. Normally, a debtor or bankrupt would obtain a general discharge in proceedings before the then federal referee in bankruptcy with neither debtor, bankrupt nor creditor having a right to a jury trial in the bankruptcy court. Creditors who desired to escape the effect of the discharge upon their particular claim would counter by bringing an action in a state court upon the alleged debt. The debtor or bankrupt would then be required to assert his federal discharge as a defense to the creditor's action on the debt, while the creditor could be expected to reply that the debt was one of those "not affected by a discharge" pursuant to unamended section 17a. In the course of determining the bankrupt's liability on the debt itself, the state court would resolve any question concerning the application of federal statutory exceptions to the discharge. Thus, while the federal bankruptcy court granted the discharge, the effect of the federal discharge was left for state court determination in conjunction with its decision on the actual merits of the creditor's underlying claim. That decision was traditionally rendered in a jury trial. *See* In re Law Research Service, Inc., No. 71–B–598 (S.D.N.Y. Dec. 9, 1971), CCH Bankruptcy Law Repts. ¶ 64,528; Countryman, *The New Dischargeability Law,* 45 Am.Bankr.L.J. 1 (1971); Herzog, *The Case for Jury Trials on the Issue of Dischargeability,* 46 Am.Bankr.L.J. 235; Countryman, *Jury Trials On Dischargeability—A Reply to Referee Herzog,* 46 Am.Bankr.L.J. 305, 306 (1972); 1A *Collier on Bankruptcy* ¶ 17.28A[6] at 1742.6 (14th ed. 1975).

**6.** "I construe the words in § 17c(5) 'where such right exists' to mean that were the case to be tried in the State courts with the defense of discharge in bankruptcy interposed as a defense—if a jury trial were *available* to either or both of the parties in such action, that same right is preserved when the case is tried in the bankruptcy court." *In re Law Research Service, Inc.,* No. 71–B–598 (S.D.N.Y. Dec. 9, 1971), CCH Bankruptcy Law Repts. ¶ 64,528 at 74,-067.

**7.** *See In re Swope,* 466 F.2d 936 (7th Cir. 1972), *cert. denied,* 409 U.S. 1114, 93 S.Ct. 929, 34 L.Ed.2d 697 (1973); *In re Sneider,* 59 F.R.D. 391 (S.D.N.Y.1973). *In re Hinchey,* 349 F.Supp. 116 (D.Or.1972). *See also In re Palfy,* 336 F.Supp. 1268 (N.D.Ohio 1972).

ion were decided before interpretive guidance was available from the Bankruptcy Rules and Advisory Committee's Notes.

The Commentators, legislative history and Advisory Committee Note to Bankruptcy Rule 409, while helpful, are not conclusive as to the meaning of section 17c(5). The debtor and his two creditors with diverse legal positions have respectable commentators to support their respective views.[8] The legislative history makes clear that preservation of a right to a jury trial was important,[9] but is of no aid in determining the extent of that right.[10] Finally, it can be persuasively argued that a portion of the Advisory Committee Note to Bankruptcy Rule 409 contemplates at least some issues not triable of right by a jury:

> "*Jury Trial.* Subdivision (c) preserves the right to jury trial where it exists under nonbankruptcy law and is an adaptation of the provisions of the Federal Rules of Civil Procedure that govern jury trials. Under the fifth sentence of the subdivision a demand for jury trial requires placement of an issue triable of right by a jury on the jury calendar of jury trials to be conducted by a district judge, but the bankruptcy judge may deny the demand if he determines after notice and hearing that there is no issue triable of right by a jury. . . ."

Another method of ascertaining Congressional intent with respect to section 17c(5) is to determine whether dischargeability is more akin to the former state court practice of permitting a jury trial where the effect of the discharge was contested in conjunction with all other issues or to grant of a discharge which was always done by the bankruptcy court without benefit of a jury. Dischargeability as a concept is essentially statutory authorization for grant of a "split discharge." As such, it more closely resembles the non-jury bankruptcy grant of a discharge than the former state procedure.

Examination of the condition sought to be corrected and the statutory approach utilized by Congress in effectuating remedial measures also provides insight into Congressional intent. Congress sought to eliminate bifurcation between different forums and resultant inefficiency and inherent inequity where a federal bankruptcy court granted a discharge and a state court determined the effect to be given to that discharge with an impecunious litigant being one of the parties shuttled between the federal and state court.[11] To accomplish that end, the Dischargeability Act provided

---

**8.** Countryman, *The New Dischargeability Law*, 45 Am.Bankr.L.J. 1 (1971); Herzog, *The Case for Jury Trials on the Issue of Dischargeability*, 46 Am.Bankr.L.J. 235; Countryman, *Jury Trials On Dischargeability—A Reply to Referee Herzog*, 46 Am.Bankr.L.J. 305, 306 (1972); 1A *Collier on Bankruptcy* ¶ 128A[6] at 1742.6 (14th ed. 1975).

**9.** "One ground for opposition to some of the dischargeability bills introduced in earlier years is resolved in S. 4247. It was said that compelling either the bankrupt or the creditor to submit to the procedure contemplated in the Bankruptcy Court might constitute unjust deprivation of the right to trial by jury. Section 7 of the bill adds a new Section 17c(5) to the Bankruptcy Act which specifically protects the right to trial by jury upon timely demand where such right presently exists." 116 Cong.Rec. 9549 (1970).

**10.** Both Senate and House Committee reports state in identical language that, "The right to a

trial by jury as it presently exists is retained." S.Rep.No.91–1173, at 2 (1970); H.R.Rep.No. 91–1502, at 2 (1970), U.S.Code Cong. & Admin. News 1970, p. 4156.

**11.** "Under present law creditors are permitted to bring suit in State courts after a discharge in bankruptcy has been granted and many do so in the hope the debtor will not appear in that action, relying to his detriment upon the discharge. Often the debtor in fact does not appear because of such misplaced reliance, or an inability to retain an attorney due to lack of funds, or because he was not properly served. As a result a default judgment is taken against him and his wages or property may again be subjected to garnishment or levy. All this results because the discharge is an affirmative defense which, if not pleaded, is waived." House Rep.No.91–1502, U.S.Code Cong. and Admin.News, 91st Cong., 2d Sess., Vol. 2, p. 4156 (1970).

both a single forum and procedure whereby the issues of dischargeability, liability and damages were to be tried in the bankruptcy court. However, unlike the former bifurcated procedure where the discharge would be raised as a defense to liability, priorities were reordered. Under the Amendment, the bankruptcy court first determines whether the debt is dischargeable, and, only if found to be non-dischargeable, does it reach the issues of liability and damages. With the shift in emphasis to first determine in the Bankruptcy Court the heretofore statutorily unknown issue of dischargeability, the language, "the right of any party . . . to a trial by jury *where such right exists,*"* can only mean the preexisting state court practice of right to jury trial on the issues of liability and damages. To hold otherwise would be to confer a right where none previously existed,[12] disrupt existing practice[13] and frustrate a previously expressed Congressional goal of expeditious bankruptcy administration:

> ". . . the chief purpose of the bankruptcy laws is 'to secure a prompt and effectual administration and settlement of the estate of all bankrupts within a limited period,' . . . [citations omitted] and that provision for summary disposition 'without regard to usual modes of trial attended by some necessary delay,' is one of the means chosen by Congress to effectuate that purpose, . . . [citations omitted]" *Katchen v. Landy,* 382 U.S. 323, 328–29, 86 S.Ct. 467, 472, 15 L.Ed.2d 391, 396 (1966); *see In re*

*Sneider,* 59 F.R.D. 391 (S.D.N.Y.1973); *In re Hinchey,* 349 F.Supp. 116, 118 (D.Or. 1972).

It is held there is no right to a jury trial on the issue of dischargeability. It is recognized that this holding forecloses jury consideration of the facts where a debt is found to be dischargeable. On the other hand where a debt is found to be non-dischargeable, the right to jury trial on the issues of liability and damages as it previously existed is preserved. However, if submission of the issues on liability to a jury will encompass, *inter alia,* the same issues as have been previously determined by a court in ruling upon dischargeability, there is a undesirable potential for conflict[14] between judge and jury.

A possibility of contradictory results cannot justify adoption of Crown's proposal that a jury be empaneled to hear evidence concurrently with the Court and either find the facts on which the Court's dischargeability determination would be based, or simply deliberate on the debt's merits if the Court finds the debt non-dischargeable. The first alternative is unacceptable since it deprives the Court of its proper role as the sole arbiter on the issue of dischargeability. The second alternative is equally unsatisfactory since it introduces delay inherent in a referral from the bankruptcy court[15] and requires the expensive and time-consuming seating of a jury—only to dismiss the jury as unnecessary when, as is likely in a signif-

---

* Emphasis added.

**12.** Cf. Countryman, *Jury Trials On Dischargeability—A Reply to Referee Herzog,* 46 Am. Bank.L.J. 305 at 309 (1972). While the effect of a discharge as an equitable defense was undoubtedly left to a jury in former state court proceedings as an adjunct to a determination of liability, it was not determined by a jury as a matter of constitutional or statutory right.

**13.** Out of a total of 5,171 dischargeability of debt cases disposed of by the federal bankruptcy courts in the last six months of 1975, only four were resolved in jury trials. *Judicial Determinations by Bankruptcy Judges,* fiscal year 1975 (last six months), Study Nos. 1 and 2,

Administrative Office of the United States Courts.

**14.** Since dischargeability is matter of federal bankruptcy law and liability and damages will most often be a matter of state law, the potential for conflicting determinations by judge and jury on the same facts can only be ascertained after a determination of non-dischargeability and is necessarily controlled by the facts of each case. Accordingly, possible applicability of the doctrines of res judicata and estoppel is expressly left open at this time.

**15.** In all jurisdictions which do not provide by Local Rule for jury trial by the bankruptcy judge pursuant to Bankruptcy Rule 409(c).

icant number of cases, the Court finds a debt dischargeable.

■ Counsel for the debtor also argues that the lack of specificity in the demands for jury trials endorsed upon creditors' applications for determinations of dischargeability render them void. He supports this argument by reference to Bankruptcy Rule 409 which requires that a party "specify the issues which he wishes to be so tried." The Court declines to find a waiver by the creditors in light of their obvious intention to preserve whatever jury trial right was available at a time when the legal efficacy of this Court's ruling on the applicability of the Dischargeability Act was on Appeal. See n.1, *supra*.

■ Finally, in view of the fact that the alleged "materially false statement in writing respecting [the debtor's] financial condition" is conceded to be either identical or similar in the complaint of both Crown and Peoples, it is concluded that the dischargeability hearings on the two creditors' claims should be combined for the purposes of taking evidence on the issue of whether the financial statement(s) in question were materially false as they related to debtor's financial condition for purposes of determining dischargeability under section 17(a)(2). This procedure will result in judicial economy and savings in time and expense to the debtor at no increased expense to either of the creditors. The joint hearing will be limited strictly to the issue of whether there was a materially false statement in writing respecting financial condition. If there is a finding adverse to the debtor on the foregoing issue, evidence as to the remaining criteria under section 17a(2) will be taken at subsequent separate hearings for each claimant contesting dischargeability.

Submit order on notice within 10 days.