**In re BUS STOP, INC., Debtor.**

**Bankruptcy No. 79–01412–BKC–TCB.**

United States Bankruptcy Court,
S. D. Florida.

Jan. 30, 1980.

Robert A. Schatzman, Miami, Fla., for Guildford Investments.

Harold Friedman, Miami, Fla., for debtor.

## ORDER ON OBJECTION TO CLAIM NO. 4 (GUILDFORD INVESTMENTS, N.V.)

THOMAS C. BRITTON, Bankruptcy Judge.

The debtor has objected (C.P. No. 11) to Claim No. 4 filed by Guildford Investments, N.V. in the amount of $39,055, plus interest and attorney's fees, upon the ground that this claim is for damages resulting from the termination of a lease from the creditor to the debtor of real property and the new Code, 11 U.S.C. § 502(b)(7). That section provides that this court shall allow claims "as of the date of the filing of the petition":

". . . except to the extent that— . . . (7) if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds—

(A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of—

(i) the date of the filing of the petition; and

(ii) the date on which such lessor repossessed, or the leassee surrendered, the leased property; plus

(B) any unpaid rent due under such lease, without acceleration, on the earlier of such dates;"

Eight days before the bankruptcy petition was filed in this voluntary Chapter 11 proceeding under the Code, the debtor's

landlord obtained a summary judgment in the State court against the debtor in the amount claimed. That judgment furnishes no clue as to the basis for recovery or the measure of damages. The landlord's affidavit in support of its motion for summary judgment, however, recites that the debtor abandoned the premises to the landlord on April 5, 1978 and that this event accelerated the rent due for the remaining term of the lease. The damages sought and received were computed as follows:

"Said sum is computed by multiplying the monthly rent ($1,620) by the 21 month period between April 5, 1979 (the date of breach) and December 31, 1979 (date lease expires)."

Application of the provisions of § 502(b)(7)(A)(ii) would limit the allowable amount of this claim to fifteen percent of the rent due for the remaining term or, in this instance, $5,103.

It is the creditor's contention that its claim became merged in the pre-petition judgment and the full faith and credit clause requires that this court accept the judgment in full as a liquidated, allowable claim without reduction on account of the provisions in § 502(b)(7). This creditor contends that neither the Congress nor this court has the right to look behind the money judgment to determine the character nor the amount of the claim which provided the foundation for the judgment.

The full faith and credit clause in the federal Constitution, Art. IV, § 1, requires only that States give full faith to the judicial proceedings of other States. However, the doctrine was extended by the Congress to require federal courts "to give full effect to the final judgments of state courts". 28 U.S.C. § 1738; *Hazen Research, Inc. v. Omega Minerals, Inc.*, 5 Cir. 1974, 497 F.2d 151, 153.

This statute, by its terms, requires that the judgment be accorded the same effect it would receive in the courts of that State. The judgment obtained by this creditor would not be res judicata under Florida law, because these are two separate causes of action. The judgment would at best constitute an estoppel only as to those matters specifically litigated between the parties. 19 *Florida Jur.*, Judgments and Decrees, § 106.

Estoppel would not prevent an examination of the record before the State court to determine the circumstances which prompted the judgment. Nor, of course, would that judgment preclude the application of § 502(b)(7) to those circumstances.

In *Margolis v. Nazareth Fair Grounds & Farmers Market*, 2 Cir. 1957, 249 F.2d 221, 223 the court followed *Pepper v. Litton*, 1939, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281, and said:

"A bankruptcy court may inquire into the validity of any claim asserted against the bankrupt and may disallow it if it is found to be without lawful existence 'and the mere fact that a claim has been reduced to judgment does not prevent such an inquiry. As the merger of a claim into a judgment does not change its nature so far as provability is concerned, *Boynton v. Ball*, 121 U.S. 457, 7 S.Ct. 981, 30 L.Ed. 985, so the court may look behind the judgment to determine the essential nature of the liability for purposes of proof and allowance . . .' "

These two cases dealt with judgments establishing fraud, but I see no reason to limit the holding in these cases to that narrow issue. The same conclusion was reached by the District Court in Connecticut in *Matter of Timenterial, Inc.*, D.Conn.1974, 3 C.D.C. 517.

It is, of course, clear that Congress in exercise of the bankruptcy clause in the federal Constitution, Art. I, § 8, is in no way restricted by State law or any act of a State court. In *Kuehner v. Irving Trust Co.*, 1937, 299 U.S. 445, 451, 57 S.Ct. 298, 301, 81 L.Ed. 340, the court said:

"Congress, in determining what such an equitable distribution demands, is free to establish standards of provability and measures of allowance regardless of the claimant's ability to maintain an action in a court or the measure of his recovery in such an action if maintainable."

It follows that Claim No. 4 must be limited to $5,103 in accordance with the provisions of § 502(b)(7)(A)(ii).