**In re Gene CURTIS, fdba G & B Investment, fdba GBI Investment, dba Western Syndications, and Bonnie Curtis, fdba G & B Investment, fdba GBI Investment, Debtors.**

**Bankruptcy No. 83A–02417.**

United States Bankruptcy Court, D. Utah, C.D.

June 11, 1984.

Robert B. Sykes, Salt Lake City, Utah, for Stewart D. Burton and Dorothy B. Burton, Paul L. Wood and Cheren Wood.

Nicholas F. McKean and R. Kimball Mosier, Mosier & McKean, Salt Lake City, Utah, for Gene Curtis and Bonnie Curtis.

## MEMORANDUM OPINION

JOHN H. ALLEN, Bankruptcy Judge.

This matter comes before the Court upon the motion of Stewart D. Burton, Dorothy B. Burton, Paul L. Wood and Cheren Wood (hereinafter "movants") to modify the automatic stay provided in 11 U.S.C. § 362(a) in order to join the debtors as defendants in a pending state court proceeding. A complete review of the record in this case and a weighing of all of the relevant factors indicates that relief from the stay should not be granted.

## FACTUAL AND PROCEDURAL BACKGROUND

The debtors, Gene and Bonnie Curtis, filed their joint petition under Chapter 11 on September 6, 1983. On October 11, 1983, movants commenced a civil action in the Third Judicial District Court of Salt Lake County, Utah, against several persons with whom the debtors were alleged to have been associated in connection with an agreement to exchange property, which was executed in 1982. The complaint generally alleges that Gene Curtis negotiated the transaction on behalf of the defendants, and that he and the defendants made fraudulent representations and concealed material facts concerning the property exchange. On October 12, 1983, movants sought relief from the automatic stay to permit them to join the debtors as parties defendant and sue them for fraud, negligent misrepresentation and breach of contract in that proceeding.[1]

A hearing was held on November 7, 1983, to consider the stay motion. After considering the memoranda and arguments of counsel, the Court denied the motion. However, on January 31, 1984, this court entered an order authorizing movants to depose the debtors and call them as witnesses in the state court action.

Movants sought leave to appeal the order denying their motion for relief from the stay,[2] and the district court granted leave to appeal. Briefs were submitted and oral argument was heard on March 27, 1984. On April 3, 1984, the district court entered a memorandum decision and order vacating this Court's order denying relief from the automatic stay.[3] The district court found that the record did not show that this Court had weighed all of the relevant factors in denying the motion for relief from the stay.[4] The district court remanded the case with instructions to consider such factors and balance the hardships to the parties.

On remand, this Court held an evidentiary hearing to reconsider movant's request for relief from the stay in light of the district court's decision. At the hearing movants were afforded an opportunity to be heard on the question of modification of the stay, to present evidence, and to argue the law. Movants presented no evidence in support of their motion, but urged the court to consider three factors in making its determination. First, it was argued that judicial economy favored modification since substantial discovery had already been completed in the state court action and a state court judgment would be res judicata in a subsequent dischargeability proceeding in the bankruptcy court. Second, it was argued that the financial hardship to the movants warranted relief.

---

1. Pursuant to its rule-making authority under 28 U.S.C. § 2075, the Supreme Court prescribed new Bankruptcy Rules to govern the practice and procedure in cases under the Bankruptcy Code, which became effective on August 1, 1983. Rule 4001, which permits a party requesting relief from the automatic stay pursuant to Section 362(d) to proceed by motion rather than by the filing of a complaint, represents a significant change from the former practice. A motion for relief from the stay is a contested matter under Bankruptcy Rule 9014 and the rules governing discovery and presentation of evidence apply.

2. Appeals from interlocutory orders in bankruptcy cases are governed by 28 U.S.C. § 1334(b) and Bankruptcy Rule 8003. *See generally* 1 COLLIER ON BANKRUPTCY ¶ 3.03 (15th ed. 1984).

3. *Burton, et al. v. Curtis,* Civil No. C–83–1325W, slip op. (April 3, 1984) (Winder, J.).

4. *Id.* at 3.

Movants considered the costs of having to litigate in two forums to be prohibitively expensive. Third, counsel expressed concern that prejudicial delay would result if the case had to be decided in a jury trial in the district court under the Emergency Rule.[5] In response, the debtors contended that movants failed to meet their burden of proof. It was argued that no showing was made that a denial of relief would cause great hardship to movants, or that they would be prejudiced by an adjudication of their claims in the bankruptcy court. The debtors further argued that the state court's determination on the issue of fraud would not be res judicata in a dischargeability proceeding in the bankruptcy court, and would have to be relitigated. The debtors argued that the time and expense of litigating liability in state court and dischargeability in the bankruptcy court would cause great prejudice to the administration of the Chapter 11 case.

## DISCUSSION

1. *Relief from the Automatic Stay "For Cause" Other Than Lack of Adequate Protection*

Movants' request for relief from the automatic stay is governed by Section 362(d)(1) of the Bankruptcy Code, which provides:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

5. The Emergency Rule enacted in this District in response to the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), provides in subsection (d) as follows:

(d) Powers of Bankruptcy Judges

(1) The bankruptcy judges may perform in referred bankruptcy cases and proceedings all acts and duties necessary for the handling of those cases and proceedings except that the bankruptcy judges may not conduct:

(A) a proceeding to enjoin a court;

(B) a proceeding to punish a criminal contempt—

(1) for cause...

The automatic stay is, of course, one of the fundamental debtor protections under the Bankruptcy Code. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 340 (1977), 1978 U.S.Code Cong. & Admin.News, 5787, p. 6296. *See* 2 COLLIER ON BANKRUPTCY ¶ 362.04 (15th ed. 1984); 1 W. Norton, BANKRUPTCY LAW AND PRACTICE § 20.04 (1981); R. Aaron, BANKRUPTCY LAW FUNDAMENTALS § 5.01 (1984); Kennedy, "Automatic Stays Under the New Bankruptcy Law," 12 U.Mich.J.L.Ref. 1, 10–24 (1978). Its primary purpose is to protect the debtor and its estate from creditors. S.Rep. No. 95–989, 95th Cong., 2d Sess. 52 (1978), 1978 U.S.Code Cong. & Admin.News, p. 5838.

The automatic stay is intended "to prevent a chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts. The stay insures that the debtor's affairs will be centralized, initially, in a single forum in order to prevent conflicting judgments from different courts and in order to harmonize all of the creditors' interests with one another." *Fidelity Mortgage Investors v. Camelia Builders, Inc.,* 550 F.2d 47, 55 (2nd Cir.1976), *cert. denied* 429 U.S. 1093; 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977). The automatic stay implements two goals. First, it prevents the diminution or dissipation of the assets of the debtor's estate during the pendency of the bankruptcy case. Second, it enables the debtor to avoid the multiplicity of claims against the estate arising in different fo-

(i) not committed in the bankruptcy judge's actual presence; or

(ii) warranting a punishment of imprisonment;

(C) An appeal from a judgment, order, decree or decision of a United States bankruptcy judge.

(D) A trial by jury.

*See In re Color Craft Press, Ltd.,* 27 B.R. 962, 967, 10 B.C.D. 182 (D. Utah 1983). *Cf.* Countryman, "Emergency Rule Compounds Emergency," 57 Am.Bankr.L.J. 1–22 (1983).

rums. *In re Larkham,* 31 B.R. 273, 276, 10 B.C.D. 1093 (Bkrtcy.D.Vt.1983). Stated differently, the policy underlying the automatic stay is to protect the debtor's estate from "the chaos and wasteful depletion resulting from multifold, uncoordinated and possibly conflicting litigation." *In re Frigitemp. Corp.,* 8 B.R. 284, 289 (S.D.N.Y.1981).

Congress recognized that in some circumstances it would be appropriate to modify the automatic stay "for cause" to permit an action to proceed before another tribunal. The term "cause" is not defined in the Bankruptcy Code. *In re Curlew Valley Associates,* No. 80–00876 (transcript of hearing, page 27) (Bkrtcy.D.Utah April 3, 1981).[6] The decision is necessarily one involving an exercise of the court's discretion. *See In re Olmstead,* 608 F.2d 1365, 1367 (10th Cir.1979) (where the court found that it is within the bankruptcy court's discretion to determine how a contingent or unliquidated claim will be liquidated, whether by judgment of another court or by its own determination). The bankruptcy court exercises the power to modify or vacate the stay "according to the particular circumstances of the case and is to be guided by considerations that under the law make for the ascertainment of what is just to the claimants, the debtor and the estate." *Foust v. Munson Steamship Lines,* 299 U.S. 77, 83, 57 Ct. 90, 93, 81 L.Ed. 49 (1936).

The House Report accompanying H.R. 8200 illustrates several situations in which it might be appropriate to modify the stay to permit litigation in another forum:

> The lack of adequate protection of an interest in property of the party requesting relief from the stay is one cause for relief, but is not the only cause. As noted above, a desire to permit an action to proceed to completion in another tribunal may provide another cause. Other causes might include the lack of any

connection with or interference with the pending bankruptcy case. For example, a divorce or child custody proceeding involving the debtor may bear no relation to the bankruptcy case. In that case, it should not be stayed. A probate proceeding in which the debtor is the executor or administrator of another's estate usually will not be related to the bankruptcy case, and should not be stayed. Generally, proceedings in which the debtor is a fiduciary, or involving postpetition activities of the debtor, need not be stayed because they bear no relationship to the purpose of the automatic stay, which is debtor protection from his creditors. The facts of each request will determine whether relief is appropriate under the circumstances.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 343–44 (1977), 1978 U.S.Code Cong. & Admin.News, p. 6300. *See also* S.Rep. No. 95–989, 95th Cong., 2d Sess. 52 (1978), 1978 U.S.Code Cong. & Admin.News, p. 5838. The legislative history of Section 362(d)(1) thus suggests that Congress intended to limit relief from the stay to a fairly narrow category of circumstances bearing little relationship to the bankruptcy case or to the purpose of the stay.

2. *Factors Applicable to Determining Whether to Modify the Stay to Permit Litigation Against the Debtor in Another Forum*

Although Section 362 does not attempt to define the parameters of the term "for cause," case law under the Code has recognized certain relevant factors which may be considered in making a determination of whether or not to modify the stay to permit litigation against the debtor to proceed in another forum:

> (1) Whether the relief will result in a partial or complete resolution of the issues. *In re Cloud Nine, Ltd.,* 3 B.R.

---

6. The single example of "cause" identified in Section 362(d)(1), *viz.,* "lack of adequate protection," is not applicable in this case. The adequate protection concept was examined by this court in *In re Alyucan Interstate Corp.,* 12 B.R.

803, 7 B.C.D. 1123, 4 C.B.C.2d 1066 (Bkrtcy.D. Utah 1981), *In re South Village, Inc.,* 25 B.R. 987, 9 B.C.D. 1332 (Bkrtcy.D.Utah 1982); and *In re Sweetwater,* 40 B.R. 733 (Bkrtcy.D.Utah 1984.).

202, 204, 5 B.C.D. 1377 (Bkrtcy.D.N.M. 1980).

(2) The lack of any connection with or interference with the bankruptcy case. *In re Penn-Dixie Industries, Inc.,* 6 B.R. 832, 7 B.C.D. 56 (Bkrtcy.S.D.N.Y.1980). *See In re Adams,* 27 B.R. 582, 585, 8 C.B.C.2d 843 (D.Del.1983); H.R.Rep. No. 95–595, *supra,* at 343–44.

(3) Whether the foreign proceeding involves the debtor as a fiduciary. *In re Bailey,* 11 B.R. 199, 201 (Bkrtcy.E.D.Va. 1981). *See* H.R.Rep. No. 95–595, *supra,* at 343–44.

(4) Whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to hear such cases. *Matter of Gary Aircraft Corp.,* 698 F.2d 775, 784 (5th Cir.1983) (bankruptcy court should defer liquidation of a government contracting dispute to the Board of Contract Appeals); *In re Vogue Instrument Corp.,* 31 B.R. 87 (Bkrtcy.E.D.N.Y.1983); *In re Good Hope Industries, Inc.,* 16 B.R. 719, 722–23 (Bkrtcy.D.Mass.1982); *In re Terry,* 12 B.R. 578, 582–83, 7 B.C.D. 1218 (Bkrtcy.E.D.Wis.1981) (vacating automatic stay to permit state patient compensation panel to adjudicate "wrongful life" malpractice claim against the debtor). *See Thompson v. Magnolia Petroleum Co.,* 309 U.S. 478, 483, 60 S.Ct. 628, 630, 84 L.Ed. 876 (1940) (unsettled questions of state property law may be submitted to state courts); *In re Lahman Mfg. Co., Inc.,* 31 B.R. 195, 198–99, 10 B.C.D. 1210 (Bkrtcy.D.S. D.1983).

(5) Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation. *Matter of Holtkamp,* 669 F.2d 505, 508–09 (7th Cir.1982). *See In re Honosky,* 6 B.R. 667, 669, 7 B.C.D. 50 (Bkrtcy.S.D.W. Va.1980); 2 COLLIER ON BANKRUPTCY ¶ 362.07[3], at 362–49 (15th ed. 1983).

(6) Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question. *See In re Mego International, Inc.,* 28 B.R. 324,

326, 10 B.C.D. 424, 425 (Bkrtcy.S.D.N.Y. 1983).

(7) Whether litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties. *See In re Cloud Nine, Ltd., supra,* 3 B.R. at 204 (Bkrtcy.D.N.M.1980).

(8) Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c). *See In re Lockwood,* 14 B.R. 374, 380–82 (Bkrtcy.E.D.N.Y.1981).

(9) Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f). *Builders and Remodelers, Inc. v. Hanson,* 20 B.R. 440, 442 (Bkrtcy.D.Minn.1982).

(10) The interest of judicial economy and the expeditious and economical determination of litigation for the parties. *In re Pemberton Pub. Inc.,* 16 B.R. 275, 277, 8 B.C.D. 801 (Bkrtcy.D.Mass.1981). *See In re Ozai,* 34 B.R. 764 (Bkrtcy.App. Pan. 9th Cir.1983).

(11) Whether the foreign proceedings have progressed to the point where the parties are prepared for trial. *In re Fiedler,* 34 B.R. 602, 604 (Bkrtcy.D.Colo. 1983).

(12) The impact of the stay on the parties and the "balance of hurt." *In re San Clemente Estates,* 5 B.R. 605, 611, 6 B.C.D. 838 (Bkrtcy.S.D.Cal.1980); *Matter of McGraw,* 18 B.R. 140, 141–42, 6 C.B. C.2d 257 (Bkrtcy.W.D.Wis.1982). *See In re Hoffman,* 33 B.R. 937, 941 (Bkrtcy.W. D.Okla.1983); *In re Saxon Industries,* 33 B.R. 54, 56 (Bkrtcy.S.D.N.Y.1983); *In re Terry, supra,* 12 B.R. 578. *In re Penn-Dixie Industries, Inc., supra,* 6 B.R. at 837. *In re Honosky, supra,* 6 B.R. at 669.

■ In considering the foregoing factors, it must be borne in mind that the process of determining the allowance of claims is of basic importance to the administration of a bankruptcy estate. *Gardner v. New Jersey,* 329 U.S. 565, 573–74, 67

S.Ct. 467, 471–72, 91 L.Ed. 504 (1947); *Lesser v. Gray*, 236 U.S. 70, 74, 35 S.Ct. 227, 228, 59 L.Ed. 471 (1915) ("A bankruptcy court in which an estate is being administered has full power to inquire into the validity of any alleged debt or obligation of the bankruptcy upon which a claim or demand against the estate is based. This is essential to the performance of the duties imposed upon it."); *United States Fidelity & Guaranty Co. v. Bray*, 225 U.S. 205, 217, 32 S.Ct. 620, 625, 56 L.Ed. 1055 (1915) ("[T]he jurisdiction of the bankruptcy courts in all 'proceedings in bankruptcy' is intended to be exclusive of all other courts, and that such proceedings include, among others, all matters of administration, such as the allowance, rejection and reconsideration of claims...."). The Bankruptcy Code and Rules implement a speedy, efficient and economical method for the determination and allowance of claims.[7]

### 3. *The Burden of Proof*

The parties disagree on the issue of who bears the burden of proof. Movants contend that upon making a prima facie showing of "cause," the burden shifts to the debtors to show that they would be greatly prejudiced if relief were granted. The debtors argue that movants must show that modifying the stay will occasion no "great prejudice" to the debtors or their estate, and the hardship to movants of continuing the stay "considerably outweighs" the hardship to the debtor that would result from modification. In vacating this Court's order denying the motion for relief from the stay, the district court directed that consideration be given to "all of the relevant factors," including prejudice to the estate and a balancing of the relative hardships.[8] However, the district court did not address the issue of who would bear the burden of proof on these questions.

Under the Bankruptcy Act of 1898 the ultimate burden of proving prejudice to administration of the debtor's estate was placed on the debtor. *See Foust v. Munson Steamship Lines, supra*, 299 U.S. at 77, 57 S.Ct. at 90; *In re Kane*, 27 B.R. 902, 905 (Bkrtcy.M.D.Pa.1983); *In re Washington Funding Corp.*, 13 B.R. 216, 221 (Bkrtcy.E.D.N.Y.1981). In a leading article on the automatic stay under the Act, Professor Frank Kennedy considered the burden of proof as follows:

All the stay rules authorize the court "for cause shown" to terminate, annul, modify, or condition the stay. The rules require a party seeking continuation of any stay against lien enforcement, how-

---

**7.** Unlike the treatment afforded contingent and unliquidated claims under the 1898 Bankruptcy Act, the Code provides for an estimate of the amount of such claims for purpose of allowance where the actual liquidation of the claim would unduly delay the closing of the case. Section 502(c) provides: "(c) There shall be estimated for purpose of allowance under this section—(1) any contingent or unliquidated claim, fixing or liquidation of which, as the case may be, would unduly delay the closing of the case; or (2) any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment." *See generally* 3 COLLIER ON BANKRUPTCY ¶ 502.03 (15th ed. 1984); Note, "Procedures for Estimating Contingent or Unliquidated Claims in Bankruptcy," 35 Stan.L.Rev. 153 (1982). In *Katchen v. Landy*, 382 U.S. 323, 328–29 86 S.Ct. 467, 471–72, 15 L.Ed.2d 39 (1966), the Supreme Court noted that it had "long recognized that a chief purpose of the bankruptcy laws is 'to secure a prompt and effectual administration of all bankrupts within a limited period,'" and that provision for summary determination of claims "'without regard

to usual modes of trial attended by some necessary delay,' is one of the means chosen by Congress to effectuate that purpose." Section 502(c) of the Code requires that all claims be converted into dollar amounts. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 354 (1977), 1978 U.S.Code Cong. & Admin.News, p. 6310; S.Rep. No. 95–989, 95th Cong., 2d Sess. 65 (1978), 1978 U.S.Code Cong. & Admin.News, p. 5851. Congress intended that contingent or unliquidated claims be estimated by the bankruptcy judges under Section 502(c), using whatever method is best suited to the particular contingencies at issue. *Bittner v. Borne Chemical Co., Inc.*, 691 F.2d 134, 135 (3d Cir.1982). The language of Section 502(c) is mandatory, not permissive, and imposes upon the court an affirmative duty to estimate any unliquidated claim where the actual liquidation of the claim would unduly delay closing of the case. *In re Nova Real Estate Investment Trust*, 23 B.R. 62, 65, 7 C.B. C.2d 87 (Bkrtcy.E.D.Va.1982).

**8.** Supra note 3, at 5.

ever, to show that he is entitled to the extension of the protection. It is not easy to reconcile the requirement of a showing of cause for modification of the stay with the requirement of a showing of entitlement for its continuation. It has been suggested that the burden of proof rests on the party seeking continuation of the stay, whether or not lien enforcement is involved. The legislative developments reflected in the amendments of the Bankruptcy Act from 1960 to 1970, however, support the view that the burden of proof as well as the initiative should rest on the party seeking relief from the stay against in personam actions of the kinds mentioned in Rule 401(a). As pointed out in the Advisory Committee's Note to Rule 401, "facts providing a justification for modifying the stay will ordinarily be more easily provable by the creditor than disprovable by the bankrupt."

Kennedy, "The Automatic Stay in Bankruptcy," 11 U.Mich.J.L.Ref. 175, 226–27 (1978) (footnotes omitted).

In *In re the Overmeyer Company, Inc.,* 2 B.C.D. 992, 10 C.B.C. 389 (Bkrtcy.S.D.N.Y.1976), a secured creditor sought relief from the automatic stay under Rule 11–44(a) [9] in order to sell certain corporate stock pledged by the debtor. The court held that a creditor seeking relief from the automatic stay must meet the initial burden of showing cause why continuance of the stay would cause irreparable damage. Upon such showing, the burden shifts to the debtor to demonstrate its entitlement to continuation of the stay. *Id.* at 993, 10 C.B.C. at 393. In *In re Kane,* 27 B.R. 902 (Bkrtcy.M.D.Pa.1983), decided under the Bankruptcy Code, the court followed *Overmeyer,* holding that Section 362(d)(1) requires a party seeking relief to establish a prima facie case for such relief.

Under the Bankruptcy Code, the burden of proof in stay litigation is governed by 11 U.S.C. § 362(g). That subsection states:

(g) In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section—

(1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and

(2) the party opposing such relief has the burden of proof on all other issues.

Most cases arising under Section 362(d)(1) involve creditors holding secured claims who allege that there is insufficient equity in the collateral to adequately protect their interests. The legislative history contemplates this situation, but does not speak to the question of the burden of proof where relief from the stay is sought "for cause" other than for lack of adequate protection. *See* H.R.Rep. No. 95–595, *supra,* at 344; S.Rep. No. 95–989, *supra,* at 54; 124 Cong.Rec. H11093, H11108 (daily ed. Sept. 28, 1978) (remarks of Representative Edwards); 124 Cong.Rec. S17409, S17425 (daily ed. Oct. 6, 1978) (remarks of Senator DeConcini). Collier observes that "[t]o some extent, the Code attempts to follow the practice in the [former] Rules by requiring a showing of cause by the party requesting relief under Section 362(d)(1) and then in Section 362(g) placing the burden of proof (risk of non persuasion) on the party opposing relief for all issues other than that of 'the debtor's equity in property.'" 2 COLLIER ON BANKRUPTCY ¶ 362.10, at 362–58 (15th ed. 1984).

■ This Court holds that one who seeks relief from the automatic stay must, in the first instance, establish a legally sufficient basis, *i.e.,* "cause," for such re-

**9.** Under the former Rules of Bankruptcy Procedure, automatic stays were prescribed by Rules 401, 601, 8–501, 9–4, 10–601, 11–44, 12–43 and 13–401. *See* Kennedy, *supra,* at 177 n. 1. Rule 11–44(a) provides: "(a) Stay of Actions and Lien Enforcement. A petition filed under Rule 11–6 or 11–7 shall operate as a stay of the commencement or the continuation of any court or other proceeding against the debtor, or the enforcement of any judgment against him, or of any act of the commencement or continuation of any court proceeding to enforce any lien against his property, or of any court proceeding, except a case pending under Chapter X of the Act, for the purpose of the rehabilitation of the debtor or the liquidation of his estate."

lief.[10] The burden then lies with the debtor to demonstrate that it is entitled to the stay. *See In re Kane, supra*, 27 B.R. at 902; *In re the Overmeyer Company, Inc., supra*, 2 B.C.D. at 992; 2 COLLIER ON BANKRUPTCY, *supra*, at ¶ 362.10. *See also In re Ludwig Honold Mfg. Co.*, 33 B.R. 722, 723 (Bkrtcy.E.D.Pa.1983); *In re Ram Mfg., Inc.*, 32 B.R. 969, 971 (Bkrtcy.E.D.Pa.1983); *In re Food Fair, Stores, Inc.*, 16 B.R. 387, 291 (Bkrtcy.S.D.N.Y.1982); *In re Wynn Homes, Inc.*, 14 B.R. 520, 522–23 (Bkrtcy.D.Mass.1981); *In re Rutter*, 9 B.R. 878, 879 (Bkrtcy.E.D.Pa.1981); *In re Soltoff*, 1 B.R. 180, 182 (Bkrtcy.E.D.Pa.1979); *In re Oakdale Associates*, 5 B.C.D. 1136, 1139 (Bkrtcy.E.D.N.Y.1979); *Matter of Nevada Towers Associates*, 3 B.C.D. 583, 584–85 (Bkrtcy.S.D.N.Y.1977). A creditor's mere unsupported allegation that continuance of the stay will cause it irreparable harm will not suffice.

## APPLICATION TO THIS PROCEEDING

██ In applying the foregoing considerations to the facts of this case, the Court finds that movants have failed to make out a prima facie case for granting relief from the automatic stay "for cause."[11] The determination of "cause" is one that necessarily requires exercise of judicial judgment and involves mixed questions of fact and law. Kennedy, "Automatic Stays Under the New Bankruptcy Law," 12 U.Mich. J.L.Ref. 1, 42–43 (1978). The Court holds that the existence of pending litigation in another forum filed after the commencement of the bankruptcy case, without more, does not constitute "cause." *Cf.* H.R.Rep. No. 95–595, *supra*, at 343.

██ However, even if it were to be assumed that movants have presented a prima facie showing of "cause," the Court concludes that the stay should not be vacated. This conclusion follows from a weighing of the appropriate factors set forth above. These factors will be discussed seriatim as they relate to the motion under consideration.

1. *Resolution of the Issues.* The contrary conclusion of the movants notwithstanding, a determination of the dischargeability of the claim by the Bankruptcy Court is unavoidable. The question of dischargeability of debts is, of course, a federal question. *In re Barrett*, 2 B.R. 296, 298 (Bkrtcy.E.D.Pa.1980). The bankruptcy court has exclusive jurisdiction to determine dischargeability of all claims relating to fraud under Section 523(c). *See* 3 COLLIER ON BANKRUPTCY ¶ 523.05 (15th ed. 1984); 1 W. Norton BANKRUPTCY LAW AND PRACTICE § 27.72 (1981). Nonbankruptcy courts have concurrent jurisdiction to determine dischargeability of certain other claims. Norton, *supra*, at § 27.73. If the state court finds fraud on the part of the debtors, the bankruptcy court must then apply the standards of 11 U.S.C. § 523 to decide the dischargeability issues. *In re Ozai, supra*, 34 B.R. at 766.

██ State Court judgments are not res judicata in a subsequent nondischargeability action in the bankruptcy court. *Commonwealth of Massachusetts v. Hale*, 618 F.2d 143 (1st Cir.1980); *In re Franklin*, 615 F.2d 909 (10th Cir.1980); *Carey Lumber Co. v. Bell*, 615 F.2d 370 (5th Cir.1980); *Matter of Kasler*, 611 F.2d 308 (9th Cir. 1979); *Lawrence T. Lasagna, Inc. v. Foster*, 609 F.2d 392 (9th Cir.1979); *In re Houtman*, 568 F.2d 651 (9th Cir.1978). *See Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979) (Court unanimously held that a bankruptcy court may consider evidence extrinsic to the judgment

---

**10.** Certainly movants are best able to present evidence of "cause." *Cf. Adams v. United States*, 317 U.S. 269, 281, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942) ("[I]t is not asking too much that the burden of showing essential unfairness be sustained by him who claims such an injustice and seeks to have the result set aside, and that it be sustained not as a matter of speculation but as a demonstrable reality.").

**11.** Movant's proffer that financial hardship would result if they had to litigate in two courts is at best inconclusive. No showing was made that they could not bear the expense or that the debtors were any better situated. More importantly, movants misunderstand the extent to which full relief could be accorded in the state court. See discussion, *infra*.

and record of a prior state court suit when determining whether such a debt is dischargeable); *In re Lockwood,* 14 B.R. 374, 377–78, B.C.D. 128 (Bkrtcy.E.D.N.Y.1981); *In re Bus Stop, Inc.,* 3 B.R. 26, 27, 6 B.C.D. 138 (Bkrtcy.S.D.Fla.1980). Significant differences exist between fraud under state law and nondischargeable fraud under Section 523(a)(2). *Compare Dugan v. Jones,* 615 P.2d 1239, 1246 (Utah 1980) (a misrepresentation is fraudulent where the circumstances impose upon vendor of real property a special duty to know the truth of his representations, or nature of the situation is such that vendor is presumed to know the facts to which his representation relates); *Sugarhouse Finance Company v. Anderson,* 610 P.2d 1369, 1373 (Utah 1980) (a finding of fraud requires a showing of a false representation of an existing material fact, made knowingly or recklessly for the purpose of inducing reliance thereon upon which the plaintiff reasonably relies to his detriment); *Blodgett v. Martsch,* 590 P.2d 298, 302 (Utah 1978) (plaintiff need not show an intent to defraud where a confidential relationship exists between the parties and breach of duty is alleged); *Cheever v. Schramm,* 577 P.2d 951, 954 (Utah 1978) (one claiming fraud must show that he acted reasonably under the circumstances); *Pace v. Parrish,* 247 P.2d 273, 274–75, 122 Utah 141 (1952) (a party claiming fraud must prove (1) that a representation was made; (2) concerning a presently existing material fact; (3) which was false; (4) which the representor either (a) knew to be false, or (b) made recklessly, knowing that he had insufficient knowledge upon which to base such representation; (5) for the purpose of inducing the other party to act upon it; (6) that the other party, acting reasonably and in ignorance of its falsity; (7) did in fact rely upon it; (8) and was thereby induced to act; (9) to his injury and damage); *Elder v. Clawson,* 384 P.2d 802, 804, 14 Utah 379 (1963) (silence may constitute actionable fraud where a duty to disclose arises from a relation of trust, confidence, inequality of condition and knowledge, or other attendant circumstances); *Johnson v. Allen,* 158 P.2d 134, 137, 108 Utah 148 (1945) (before one can obtain relief from a claimed fraud, he must show not only that he relied on the misrepresentation but also that he had the right to rely on it), *with In re Firestone,* 26 B.R. 706, 713 (Bkrtcy.S.D.Fla.1982) (the five elements of nondischargeable fraud under Section 523(a)(2)(A) are that (1) the debtor made the representations; (2) that at the time he knew they were false; (3) that he made them with the intention and purpose of deceiving the creditor; (4) that the creditor relied on such representations; and (5) that the creditor sustained the alleged loss and damage as the proximate result of the representations having been made); *Matter of Schnore,* 13 B.R. 249 (Bkrtcy.W.D.Wis.1981) (in order for fraudulent misrepresentation to constitute exception to discharge, there must be actual, subjective intent on the part of the debtor to deceive the creditor at the time of the transaction); *In re West,* 21 B.R. 872, 875 (Bkrtcy.M.D.Tenn.1982) (a creditor must establish intentional or positive fraud; it is insufficient for a creditor to prove "implied fraud"); *Matter of Lawrence,* 1 B.R. 402, 405, B.C.D. 1185 (Bkrtcy.S.D.N.Y.1979) (an objecting creditor must prove representation, falsity, scienter, deception and injury by clear and convincing evidence and the inference of fraud must be unequivocal).

It is clear that in a nondischargeability action the bankruptcy court may look behind the state court judgment and examine the facts in light of the Bankruptcy Code. A state court judgment would be subject to collateral attack by the bankruptcy court and would not determine the issue of nondischargeability. Therefore, an order granting relief from the stay to permit movants to liquidate their claims against the debtors in the state court proceeding will only result, at best, in a partial resolution of the issues and at worst will result in additional expense to the parties and needless relitigation in the bankruptcy court. *See In re Cloud-Nine, Ltd., supra,* 3 B.R. at 204.

2. *Lack of Connection with the Bankruptcy Case.* Congress contemplated that

relief from the stay may be appropriate to permit state court adjudication of such matters as divorce, child custody and probate proceedings where such matters bear no relation to the bankruptcy case. H.R. Rep. No. 95–595, *supra,* at 343. However, unlike those issues, the allowance of claims and determination of nondischargeability are fundamental bankruptcy issues. See discussion, *supra.*

3. *Debtor as a Fiduciary.* This factor is apparently not applicable to this proceeding.

4. *Another Forum Better Suited to Determination of the Issue.* Movants' complaint alleges causes of action for fraud, negligent misrepresentation and breach of contract. These matters do not involve unsettled questions of state law, nor do they require adjudication before a specialized tribunal. Rather, they are matters routinely heard in the bankruptcy court.

5. *Costs Borne by Insurance Carrier.* With regard to the question of costs, there is no insurance carrier involved in this case and all costs and expenses of litigation must be borne by the respective parties.

6. *Third Party Liability.* Movants seek more than an adjudication of the liability of third parties. They want to obtain a nondischargeable claim against the debtors in the state court action.

7. *Interests of Other Creditors.* No evidence is before the Court concerning the interests of other parties in this Chapter 11 case.

8. *Equitable Subordination.* There is no basis upon which the Court can presently determine whether movants' claim is subject to equitable subordination under Section 510(c).

9. *Avoidable Lien.* The Court cannot presently determine whether a judgment against the debtors in the state court action would result in a voidable judicial lien under Section 522(f).

10. *Progress of State Court Action.* The state court action was filed *after* the debt-

ors filed their bankruptcy petition. In the Court's view, "a desire to permit an action to proceed to completion in another tribunal," *see* H.R.Rep. No. 95–595, *supra,* at 343, U.S.Code Cong. & Admin.News 1978, p. 6300, contemplates the situation in which the debtor is a party to a prepetition action that has progressed to the point where it would be a waste of the parties' and the court's resources to begin anew in the bankruptcy court. It appears that significant pretrial discovery and other proceedings would be required if the debtors were joined as defendants.

11. *Judicial Economy and Expeditious Determination of the Issues.* It is argued by the movants that substantial discovery has already been accomplished in the state court action, which would be for naught if relief was denied. This contention is without merit. The debtors are not parties to the proceeding. It must be presumed that such discovery as has occurred was directed at obtaining relevant evidence against the existing defendants in the action. *See* Rule 26(b)(1), Utah R.Civ.P. Movants also contend that prejudicial delay would result from an adjudication of the issues in the bankruptcy court because a jury trial would have to be conducted in the district court.[12] Two facets of this argument warrant comment. First, a jury trial generally is not available in proceedings to estimate claims under Section 502(c). *See Bittner v. Borne Chemical Co., Inc.,* 691 F.2d 134, 135 (3d Cir.1982) ("It is conceivable that in rare and unusual cases . . . a jury trial may be necessary to obtain a reasonably accurate valuation of the claims."); 3 COLLIER ON BANKRUPTCY § 502.03, at 502–65 through 502–66 (15th ed. 1984). *Compare Pepper v. Litton,* 308 U.S. 295, 307, 60 S.Ct. 238, 245, 84 L.Ed. 281 (1939) (In passing on the allowance of claims the bankruptcy court sits as a court of equity), *with Katchen v. Landy,* 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966) (There is no Seventh Amendment right to a jury trial in equitable proceedings in the bankruptcy court).

---

**12.** *Supra* note 5.

Second, although I refrain from deciding an issue not properly before me, it must be noted that the question of whether bankruptcy courts may conduct jury trials remains unresolved in the aftermath of the new Bankruptcy Rules. Several courts have held that insofar as subdivision (d)(1)(D) [13] of the Emergency Rule conflicts with Bankruptcy Rule 9015, which was promulgated by the Supreme Court under statutory authority conferred by 28 U.S.C. § 2075, the latter must prevail. *Matter of Paula Saker & Co.,* 37 B.R. 802, 809 (Bkrtcy.S.D.N.Y.1984); *In re Martin Baker Well Drilling, Inc.,* 36 B.R. 154, 158 (Bkrtcy.D.Maine 1984); *In re River Transportation Co.,* 35 B.R. 556, 559–60, 11 B.C.D. 300 (Bkrtcy.M.D.Tenn.1983). *Contra In re Proehl,* 36 B.R. 86, 87–88 (W.D. Va.1984). *Cf. In re Morrissey,* 717 F.2d 100 (3d Cir.1983) ("clearly erroneous" standard of review under Bankruptcy Rule 8013 prevails over the de novo review standard of Emergency Rule § (e)(2)(B)).[14]

The ultimate question in this case is the allowance of movant's claims against the debtor's estate and the dischargeability thereof. A determination of liability in the state court action would be followed by the filing of a proof of claim in this court and continuation of the nondischargeability suit. Serious questions exist with respect to the right to a jury trial in the bankruptcy court. However, the Court believes that the most expeditious course would be to adjudicate movants' claim here and, if necessary, estimate their claim under the procedure afforded by Section 502(c).

**13.** *Id.*

**14.** Movants have not argued that they are entitled to a jury trial in their nondischargeability action. Under the 1898 Bankruptcy Act, Judge Herzog of the Bankruptcy Court for the Southern District of New York presented a strong argument for the right to a jury trial in nondischargeability cases. *See In re Law Research Service, Inc.,* Bankr.Law Rep. ¶ 64,528 (Bkrtcy. S.D.N.Y.1971). *Compare* Herzog, "The Case for Jury Trials on the Issue of Dischargeability," 46 Am.Bankr.L.J. 235 (1972), *with* Countryman, "Jury Trials on Dischargeability—A Reply to Referee Herzog," 46 Am.Bankr.L.J. 311 (1972). However, the weight of authority under the Act

12. *The Balance of Hurt.* Financial hardship to the movants must, of course, be balanced against financial hardship to the debtors. *See Matter of McGraw, supra,* 18 B.R. at 142. In the absence of some other justification, the court will not shift the financial burden from another party to the debtors. To do so would contravene the fundamental policy in favor of economic administration of debtors' estates.

The most important factor in determining whether to grant relief from the automatic stay to permit litigation against the debtor in another forum is the effect of such litigation on the administration of the estate. Even slight interference with the administration may be enough to preclude relief in the absence of a commensurate benefit. In *In re Penn-Dixie Industries, Inc., supra,* 6 B.R. 832, the debtor had been named as a party defendant in several civil antitrust lawsuits prior to the filing of its Chapter 11 petition. Thereafter, plaintiffs in the antitrust litigation sought relief from the automatic stay in order to obtain the debtor's customer lists. Relying upon the legislative history of Section 362, the court observed that "an important key to determining whether to permit an action to proceed in another tribunal turns upon the issue of 'connection with or interference with the pending bankruptcy cases.'" *Id.* at 835. Emphasizing that furnishing the lists would involve an expenditure of energy and money and detract from the reorganization effort, the bankruptcy court denied the requested relief:

was decisively contrary to Herzog. *See e.g., In re Swope,* 466 F.2d 936 (7th Cir.1972), *cert. denied* 409 U.S. 114, 93 S.Ct. 929, 34 L.Ed.2d 697 (1973); *Matter of Copeland,* 412 F.Supp. 949 (D.Del.1976); *Transport Idemnity Company v. Hofer Truck Sales,* 339 F.Supp. 247 (D.Kan. 1971); *Matter of Palfy,* 336 F.Supp. 1268 (D.Ohio 1972).

The right to a trial by jury in bankruptcy matters is unaffected by the Code. 28 U.S.C. § 1480(a). *See* H.R.Rep. No. 95–595, *supra,* at 448; S.Rep. No. 95–989, *supra,* at 157. *Cf.* Levy, "Trial by Jury Under the Bankruptcy Reform Act of 1978," 12 Conn.L.Rev. 1–13 (1979).

The granting of Plaintiff's requested relief would also interfere with the pending bankruptcy case. As pointed out earlier, Plaintiffs' requested relief from the automatic stay does not ask for permission to proceed in full with their antitrust suit. What they seek is specific production of lists to aid discovery in litigation outside this Court that is already stayed. Nowhere does the Bankruptcy Code or Rules of Bankruptcy Procedure provide for this, and to require the Debtor to comply with the request will necessitate a deviation from the Debtor's duties and responsibilities in this reorganization, (not to mention the costs of compliance). That consideration cannot be shrugged off as de minimis. Interference by creditors in the administration of the estate, no matter how small, through the continuance of a preliminary skirmish in a suit outside the Bankruptcy Court is prohibited. In short, the Debtor should not be required to devote energy to this collateral matter at this juncture.

*Id.* at 836. *Cf. In re Dakotas' Farm, Mfg. Co.* 31 B.R. 92 (Bkrtcy.D.S.D.1983) (documents ordered produced provided plaintiff bear all copying expenses and the salary of any clerical assistance employed in providing the copies).

On the record before the Court, it is not possible to determine that the hardship to movants would outweigh the hardship to the debtors.

## CONCLUSION

■ Undoubtedly, there are instances in which it is both reasonable and appropriate to grant relief from the automatic stay to permit another forum to determine whether a creditor has a valid claim against the estate. The Court finds, however, that this case would be more conveniently administered if the stay remained in effect, since this court is in the best position to afford complete relief to the parties. Movants have failed to show that their claim could be liquidated more expeditiously or economically in the state court action. Relief from the stay would frustrate, rather

than advance, the economical administration of this case. The potential disruption and expense to the debtors' estate in defending the state court action would cause great prejudice to the administration of this case. The collateral benefits that movants hope to achieve in the state court proceeding are nonexistent. The mechanism for a speedy adjudication of the merits of movants' claim and the determination of nondischargeability of any debt arising thereunder is an integral part of the Bankruptcy Code and Rules. Considerations of overall judicial economy and the interests of the parties, therefore, favor resolution in this Court.

Based on the foregoing analysis, the motion for modification of the automatic stay is denied.