In re KANSAS PSYCHIATRIC INSTITUTES, INC., Psychiatric Health Centers of Greater Kansas City, Inc., Overland Associates, L.P., Overland Park Hospital, Inc., Debtors.

Bankruptcy Nos. 94–21986–11 to 94–21989–11.

United States Bankruptcy Court, D. Kansas.

July 13, 1995.

James E. Bird and Christopher C. Wren of Polsinelli, White, Vardeman & Shalton, Kansas City, MO, for debtors.

Gregory S. Gerstner and Paul G. Schepers of Seigfreid, Bingham, Levy, Selzer & Gee, P.C., Kansas City, MO, for NationsBank, N.A.

Cynthia Grimes of Levy and Craig, Overland Park, KS, for Unsecured Creditors Committee.

## MEMORANDUM DECISION

JOHN T. FLANNAGAN, Bankruptcy Judge.

The debtors in this case, Kansas Psychiatric Institutes, Inc., Psychiatric Health Centers of Greater Kansas City, Inc., Overland Associates, L.P., and Overland Park Hospital, Inc., filed for protection under Chapter 11 of the Bankruptcy Code on October 27, 1994.[1] The Court entered an order for joint administration of the cases on January 5, 1995.

### NATURE OF THE CASE

On January 3, 1995, NationsBank, N.A. ("NationsBank"), moved for relief from the automatic stay to proceed in a lawsuit styled *NationsBank, N.A. v. Psychiatric Health Centers of Greater Kansas City, Inc.*, Case No. 94–2355–GTV, pending in the United States District Court for the District of Kansas (hereinafter *"NationsBank v. PHC"*).[2]

The complaint filed in *NationsBank v. PHC* seeks a declaration that Letters of Guarantee assigned as security by PHC to NationsBank remain in full force and effect, enforceable against PHC shareholders. The suit also seeks an order compelling PHC to execute all documents necessary to permit NationsBank to draw upon the Letters of Guarantee. The Letters of Guarantee were originally given to Psychiatric Health Centers of Greater Kansas City, Inc. ("PHC"), by PHC shareholders in partial consideration for PHC stock.

In a Pretrial Order prepared in connection with this motion for stay relief, the parties stipulate to the following facts for purposes of the motion only:[3]

A. PHC is the owner and holder of 100% of the issued and outstanding shares of capital stock of Overland Park Hospital,

---

1. Debtors appear by their attorneys, James E. Bird and Christopher C. Wren of the firm of Polsinelli, White, Vardeman & Shalton of Kansas City, Missouri. NationsBank, N.A. appears by its attorneys, Gregory S. Gerstner and Paul G. Schepers of the firm of Seigfreid, Bingham, Levy, Selzer & Gee, P.C., of Kansas City, Missouri. Cynthia Grimes of the firm of Levy and Craig of Overland Park, Kansas, appears for the Unsecured Creditors Committee.

2. The Court finds that this proceeding is core under 28 U.S.C. § 157 and that the Court has jurisdiction under 28 U.S.C. § 1334 and the general reference order of the District Court effective July 10, 1984 (D.Kan.Rule 705).

3. The exhibits referenced in the Stipulation are not attached to this order.

Inc. (OPH) and Kansas Psychiatric Institute, Inc. (KPI).

B. OPH, KPI and NationsBank are parties to a certain Revolving Credit Agreement dated October 10, 1989, as amended by a certain First Amendment to Revolving Credit Agreement dated May 31, 1990 and as further amended by a certain Second Amendment to Revolving Credit Agreement dated December 24, 1991 (collectively the "Loan Agreement").

C. OPH's and KPI's payment obligations under the Loan Agreement is evidenced by a Revolving Credit Note dated October 10, 1989 (the "Revolving Credit Note").

D. Pursuant to the provisions of the Revolving Credit Note, OPH and KPI, jointly and severally, agreed to pay to NationsBank, on demand $1,000,000 or so much thereof as had been advanced to the account of OPH and/or KPI consistent with the terms of the Loan Agreement. As ultimately amended, the Revolving Credit Note, provided that KPI and OPH agreed to pay the amounts advanced under the Loan Agreement up to a ceiling amount of $500,000.00.

E. PHC guaranteed the obligations of KPI and OPH under the Loan Agreement and Revolving Credit Note through a Guaranty Agreement dated October 10, 1989 (the "PHC Guaranty"). A copy of the Guaranty is attached as Exhibit 1 to this Order.

F. Concurrent with the execution of the Loan Agreement and the PHC Guaranty, PHC executed an Assignment of Irrevocable Standby Letters of Guarantee (as from time to time amended the "Assignment"). The Assignment provided that PHC had issued shares of stock to its various stockholders in consideration for which said stockholders paid PHC $1.00 in cash and $4.00 in the form of an irrevocable standby letter of guarantee for each share purchased, (the "Letters of Guarantee") the Letters of Guarantee were by their terms assignable by PHC to any lender of PHC or of one or more of its affiliates. Pursuant to the Assignment, PHC assigned to NationsBank all of its

right, title and interest in and to said Letters of Guarantee. A true and correct copy of the Assignment is attached to this Order as Exhibit 2 and incorporated herein by reference.

G. Pursuant to the Assignment, PHC covenanted and agreed to promptly and upon request execute, acknowledge and deliver to NationsBank any assignment, certificates or other documentation which NationsBank may reasonably require. PHC also agreed not to make any changes or amendments to the Letters of Guarantee or release, reduce, terminate or cancel any of the Letters of Guarantee without the NationsBank's prior written consent. Subject to the terms and conditions of the Assignment, upon the occurrence of an Event of Default (as defined in the Loan Agreement), NationsBank had the right to make demand upon PHC's stockholders for the amounts remaining due under the terms of the Letters of Guarantee.

H. Consistent with said Assignment, PHC delivered to NationsBank the original Letters of Guarantee on or about October 10, 1989.

I. By their terms the Letters of Guarantee provided that PHC or its assignees had the right to draw on the Letters of Guarantee the amount provided in the schedules set forth therein. Pursuant to those schedules, unless drawn on following an Event of Default and before February 16, 1994, the duty of a stockholder to make payments under the Letters of Guarantee expired.

J. The Letters of Guarantee provided that drawings by any transferee thereunder shall be effected by presentation to the issuer of a Certificate of Draft and a Certificate of Transfer or Assignment of Letter of Guarantee, blank forms of which were attached to each Letter of Guarantee. The Letters of Guarantee were in differing amounts but the form of the Letters of Guarantee is set forth on the Letter of Guarantee attached as Exhibit 3 to this Order.

K. Pursuant to the Assignment, PHC executed and delivered to NationsBank Certificates of Transfer of Assignment for

each of the Letters of Guarantee (the "Certificates of Transfer"). The form of the Certificates of Transfer of Assignment is set forth on the certificate attached hereto as Exhibit 4 to this order.

L. On or about May 31, 1990, OPH, KPI and NationsBank agreed to amend certain of the provisions of the Loan Agreement, as evidenced by a First Amendment to Revolving Credit Agreement, which provided for, among other things, an increase in the principal amount of the Revolving Loan Committed Amount (as defined therein) from $1,000,000 to $2,250,000.

M. Concurrent with the execution of the First Amendment to Revolving Credit Agreement, OPH, KPI, and NationsBank entered into a First Modification to Revolving Credit Note dated May 31, 1990 (the "First Modification to Revolving Credit Note") to reflect the increase in the maximum principal amount to be advanced thereunder.

N. On or about December 24, 1991, OPH, KPI and NationsBank entered into a Second Modification to Revolving Credit Agreement (the "Second Amendment to Revolving Credit Agreement"), pursuant to which the parties agreed, among other things, to: (I) decrease the maximum principal amount of the Revolving Loan Committed Amount from $2,250,000 to $500,000; and (II) permit OPH and KPI to repay a portion of the principal balance then outstanding under the Revolving Credit Note in an amount up to $1,250,000 on a term basis. A copy of the Second Amendment to Revolving Credit Agreement is attached as Exhibit 5 to this Order.

O. Concurrent with the execution of the Second Amendment to Revolving Credit Agreement, OPH, KPI and NationsBank entered into a Second Modification to Revolving Credit Note, dated December 24, 1991 (the "Second Modification to Revolving Credit Note") to reflect the reduction in the maximum principal amount that may be advanced and remain outstanding thereunder and to eliminate the words "or unless sooner demanded on September 30, 1992" from the Revolving Credit Note. With those modifications, all amounts advanced and outstanding under the Revolving Credit Note became payable strictly on demand. (The Revolving Credit Note, as amended by the First Modification to Revolving Credit Note and as further amended by the Second Modification to Revolving Credit Note is hereinafter referred to as the "Revolving Note").

P. To evidence the repayment of that portion of the principal amount to be repaid on a term basis, OPH and KPI executed a term note, dated December 24, 1991, in the original principal amount of $1,250,000 (the "Term Note"). A true and correct copy of the Term Note is attached hereto as Exhibit 6 and incorporated by reference herein.

Q. On or about December 24, 1991, PHC executed a consent to the Second Amendment to Revolving Credit Agreement, thereby consenting and agreeing to that Amendment. The consent provided: "PHC acknowledges and agrees that neither execution and delivery of the foregoing Amendment nor any of the terms, provisions and agreements contained in the foregoing Amendment shall in any manner impair, lessen, waive, modify or otherwise affect the indebtedness, liabilities and obligations of PHC to the Lender under and in connection with the Guaranty, the Management Agreement Assignment, the Letters of Guaranty Assignment, the Stock Pledge Agreement or any of the other Financing Documents to which PHC may be a party, except that the definition of 'Obligations' secured by all of the foregoing is hereby amended and increased to include the 'Obligations' as amended and increased in the First Amendment".

R. Concurrent with the Second Modification to Revolving Credit Note and the decrease in principal of the Revolving Loan Committed Amount, PHC executed a First Amendment to Assignment of Irrevocable Standby Letters of Guarantee dated December 24, 1991 (the "First Amendment"). The First Amendment altered the ceiling amount of the Letters of Guarantee. The First Amendment is attached hereto as Exhibit 7 to this Order. The First

Amendment provided: "This Amendment may not be amended, changed, modified, altered or terminated without in each instance the prior written consent of the Lenders and PHC. This Amendment shall be construed in accordance with, and governed by, the laws of the State of Maryland."

S. The First Amendment reduced the ceiling amount of the Letters of Guarantee to $1,000,000 and provided, among other things, that PHC will execute such confirmatory instruments with respect to the Assignments as NationsBank may require. The First Amendment defined "Assignment" as "that certain assignment of irrevocable letters of guarantee dated October 10, 1989."

T. On or about February 22, 1993, PHC's stockholders delivered to PHC various substitute irrevocable standby letters of guarantee, (The "Substitute Letters of Guarantee") the Substitute Letters of Guarantee provided that PHC or any transferee who was creditor of or who had loaned or advanced funds to PHC or its subsidiaries or affiliates, had the right to draw amounts up to the principal amount stated therein on or before December 31, 1995. The expiration date set forth in the Substitute Letters of Guarantee is December 31, 1995. The Substitute Letters of Guarantee were in differing amounts but the form of the Substitute Letters of Guarantee is shown in the sample Substitute Letter of Guarantee attached hereto as Exhibit 8 to this Order.

U. The Substitute Letters of Guarantee were delivered to NationsBank on or about May 27, 1993, with a cover letter from PHC which stated: "enclosed are the original Substitute Irrevocable Standby Letters of Guarantee executed by each Stockholders of [PHC]." In its letter PHC instructed NationsBank to retain the Substitute Letters of Guarantee and to return the original Letters of Guarantee to PHC.

V. At the same time, PHC did not deliver to NationsBank any Certificates of Transfer with respect to Substitute Letters of Guarantee.

W. There were no new written assignments of Letters of Guarantee executed after December 24, 1991.

X. On or about December 28, 1993, in accordance with and pursuant to the terms of the Revolving Credit Note, NationsBank lent to OPH and KPI the sum of $375,000.

Y. On February 24, 1994, NationsBank, through its agent, AMRESCO–Institutional, Inc., notified OPH and KPI that it was demanding payment of all sums due under the Revolving Credit Note within 90 days i.e. May 31, 1994 and terminating its agreement to make any further advances thereunder.

Z. On May 31, 1994, KPI and OPH did not pay to NationsBank the amount demanded.

aa. On June 7, 1994, NationsBank, through its agent, AMRESCO–Institutional, Inc., declared OPH and KPI to be in default of their obligations under the Revolving Credit Agreement and demanded immediate payment of all amounts then due.

bb. Thereafter, on July 8, 1994, NationsBank notified OPH and KPI that it was declaring the Term Note to be in default and demanded immediate payment of all sums due thereunder. KPI and OPH did not pay NationsBank the amount demanded on July 8, 1994.

cc. On or about July 15, 1994, NationsBank wrote to each of the stockholders of PHC, stating PHC was in default of its Guaranty Agreement and demanded the stockholders pay the amounts set forth in the Substitute Letters of Guarantee.

dd. In response to NationsBank's July 15, 1994 letter, PHC asserted that the Substitute Letters of Guarantee were "nullified" as of April 22, 1994 pursuant to a Notice of Nullification and Voiding of Substitute Letters of Guarantee (the "Notice"), which was enclosed with said Letter. A copy of the letter and the Notice of Nullification are attached to this Order as Exhibit 9, and a copy of the Written Consent in Lieu of Special Meeting of the PHC Board of Directors and Shareholders is attached as Exhibit 10 to this Order. PHC also asserted that the Substitute Ir-

revocable Standby Letters of Guarantee could not be honored because the transfer certificates in connection with those letters had not been executed and that the original Letters of Guarantee had expired on February 16, 1994.

ee. On or about August 22, 1994, NationsBank wrote to PHC with a copy to the stockholders asserting that PHC had no authority to cancel the Substitute Irrevocable Standby Letters of Guarantee and that PHC's purported nullification was of no force and effect, and demanded that PHC execute and deliver to NationsBank the Certificates of Transfer corresponding to the Substitute Letters of Guarantee.

ff. PHC has refused to issue said Transfer Certificates. The stockholders of PHC have not paid to NationsBank any of the amounts set forth in their respective Substitute Letters of Guarantee.

gg. The complaint filed by NationsBank in *NationsBank v. PHC* includes three counts: one seeking a declaratory judgment—namely that the Substitute Letters of Guarantee are valid, enforceable and have been properly assigned to NationsBank; second, seeking specific performance—namely that PHC be directed to execute and deliver, as promised, the Certificates of Transfer and other documents needed by NationsBank to draw upon the Letters of Guarantee; and lastly, seeking injunctive relief for failure to comply.

hh. PHC is the sole defendant in *NationsBank v. PHC.*

ii. The Substitute Letters of Guarantee by their terms state: Issuer shall have no right to reimbursement from, and no recourse against, Psychiatric Health or its subsidiaries or affiliates or any assignee or transferee of this Substitute Letter of Guarantee for any amounts that are drawn pursuant to this Letter of Guarantee and Issuer hereby waives any and all rights of refund, reimbursement, subrogation, contribution, indemnification or any other right to recover amounts paid hereunder from Psychiatric Health or any other person or entity. In no event shall Issuer have recourse against any assignee or transferee of Beneficiary for any actions of

Beneficiary taken pursuant to this Substitute Letter of Guarantee.

The parties further stipulate and agree that the law governing the issue of NationsBank's right to relief from the automatic stay is found at 11 U.S.C. § 362(d)(1) and the cases decided under that section of the Bankruptcy Code.

## DISCUSSION

Debtor contends that under 11 U.S.C. § 362(d)(1), "cause" does not exist to lift the automatic stay and allow NationsBank to move forward with its complaint in district court and that granting the relief requested will adversely affect the bankruptcy estate.

Conversely, NationsBank argues that granting it relief from the stay will not affect the administration or property of the estate since PHC has no right or interest in the Substitute Irrevocable Standby Letters of Guarantee which are at the heart of the controversy pending in the district court.

The automatic stay imposed by § 362(a) is designed to prevent diminution or dissipation of assets of a debtor's estate, to give the debtor an opportunity to assess its financial condition, and to focus the claims resolution process in the bankruptcy court. *Fortier v. Dona Anna Plaza Partners,* 747 F.2d 1324, 1330 (10th Cir.1984). However, the stay may be modified "for cause" to allow commencement or resolution of non-bankruptcy actions against the debtor. 11 U.S.C. § 362(d)(1).

Section 362(d)(1) does not define "cause" and courts are required to consider this issue on a case-by-case basis. *In re Kelly,* 125 B.R. 301 (Bankr.D.Kan.1991). In determining whether a creditor should be allowed to commence or continue a pending action in another forum, courts consider a variety of factors, including: (1) whether the estate or the debtor will suffer any great prejudice if the suit is allowed to proceed; (2) the impact of continuation of the stay on the movant and on other parties; (3) judicial economy and the need for expeditious and economical determination of the litigation between the parties; (4) whether the action essentially involves third parties; and (5)

whether the relief will result in partial or complete resolution of the issue. *In re Curtis,* 40 B.R. 795, 799–801 (Bankr.D.Utah 1984); *In re Makarewicz,* 121 B.R. 262, 265 (Bankr.S.D.Fla.1990).

■ The Court finds that each of these factors support NationsBank's request for stay relief. The stipulated circumstances support NationsBank's contention that without an expeditious determination of the district court action, the creditor may suffer substantial prejudice since by their terms the Substitute Letters of Guarantee expire on December 31, 1995.

It is apparent that although the action is commenced against the debtor, the purpose is to make demand on the shareholder. While the results of the district court action may very well impact on the debtor's plan, the fact remains that the issue must be decided with dispatch. Delaying the determination might visit upon NationsBank a forfeiture of a valid legal right to drawn upon the Substitute Letters of Guarantee.

The Court grants NationsBank's motion for relief from the automatic stay in order to proceed to judgment in the pending district court action, *NationsBank v. PHC,* Case No. 94–2355–GTV.

The foregoing discussion shall constitute findings of fact and conclusions of law under Fed.R.Bankr.P. 7052 and Fed.R.Civ.P. 52(a).

IT IS SO ORDERED.