In re CLC OF AMERICA, INC., Debtor.

Bankruptcy No. 86–00017(SE).
Motion No. 29.

United States Bankruptcy Court,
E.D. Missouri,
Southeastern Division.

Aug. 26, 1986.

Gregory D. Willard, Carl J. Spector, St. Louis, Mo., for debtor.

Curtis L. Mann, St. Louis, Mo., for movant.

Barry S. Schermer, Clayton, Mo., for Creditors' Committee.

## MEMORANDUM OPINION

DAVID P. McDONALD, Bankruptcy Judge.

### INTRODUCTION

On January 13, 1986, CLC of America, Inc. ("CLC") filed its voluntary Chapter 11 petition in this Court. Prior to bankruptcy CLC had been sued in Arizona state court by Lakeshore Equipment Distributors, Inc. ("Lakeshore"). On May 15, 1986, Lakeshore moved the Court to modify the stay to permit it to continue prosecution of its state court action against CLC. On June 16, 1986, the Court heard Lakeshore's motion, at which time CLC and the Creditors' Committee filed a brief opposing Lakeshore's motion. Lakeshore then requested and was granted leave to file a post hearing brief. On June 30, 1986, Lakeshore filed its brief and on July 14, 1986, Debtor filed its response thereto. Upon the pleadings, briefs, argument of counsel, the evidence adduced at the hearing, and the record as a whole, the Court will this date enter an order denying Lakeshore's Motion To Modify Stay.

### BACKGROUND FACTS

Lakeshore alleges that in February, 1984, CLC and Richard Kelly, Lakeshore's President, entered into a stock purchase agreement. Kelly purchased stock in certain of CLC's former subsidiaries which he then contributed to Lakeshore, thereby causing Lakeshore to assume ownership and control of the former CLC subsidiaries. Lakeshore further alleges that this transaction involved fraud, negligent misrepresentation, breach of contract, breach of express warranties and violations of the Arizona racketeering laws on the part of CLC. Based on these allegations, Lakeshore filed suit against CLC in Maricopa County, Arizona Superior Court on or about December 28, 1984, demanding recision of the agree-

ment or damages in the sum of $10,500,-000.00.

Although Lakeshore's suit against CLC had not been tried before CLC filed bankruptcy, some discovery had been completed. This discovery consisted mainly of interrogatories, request for production of documents, request for admission and their responses.

Lakeshore asserts that discovery is 75 percent complete, but the Court does not find this assertion likely in view of the fact that depositions of the principal witnesses are necessary before the case can be tried and these have not been done. Because these depositions are likely to take a full week or more, the Court finds that a more realistic assessment is that discovery is only 50 percent complete.

Although the filing of CLC's bankruptcy petition stayed Lakeshore from further prosecuting its state court case against CLC, Lakeshore did timely file a proof of claim based on the same allegations as that lawsuit (Claim No. 22). Lakeshore is claiming $10,500,000.00 as a general unsecured claim.

Lakeshore's claim is not covered by any of CLC's insurance policies. Thus, costs of defending that claim must be borne by the estate. CLC alleges that any time which would be incurred in defending the suit in Arizona would be especially burdensome and harmful to the estate since its extended exclusive time period for filing a plan of reorganization expires on October 3, 1986.

JURISDICTION

This Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. This is "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(G), which the Court may hear and determine.

DISCUSSION

The question before the Court is whether Lakeshore's claim should be liquidated in Arizona or as part of CLC's bankruptcy proceedings. Lakeshore argues that cause exists under 11 U.S.C. § 362(d)(1) for modifying the stay to permit liquidation of its claim by the Arizona state court. On the other hand, CLC and the Creditors' Committee dispute that cause exists and prefer the claim to be liquidated as part of the bankruptcy proceedings. Indeed, they argue that in view of the fact that CLC's exclusive period for filing a plan expires on October 3, 1986, the Court should estimate Lakeshore's claim under 11 U.S.C. § 502(c).

In determining whether cause exists for modifying the stay, Lakeshore has the burden of establishing a legally sufficient basis for such relief. Were Lakeshore to meet that burden, CLC would have to demonstrate that it is entitled to the stay. *In re Curtis*, 40 B.R. 795, 802–03 (Bankr.D. Utah 1984).

In *Curtis*, the court cited a number of factors,

which may be considered in making a determination of whether or not to modify the stay to permit litigation against the debtor to proceed in another forum:

(1) Whether the relief will result in a partial or complete resolution of the issues.

(2) The lack of any connection with or interference with the bankruptcy case.

(3) Whether the foreign proceeding involves the debtor as a fiduciary.

(4) Whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to hear such cases.

(5) Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation.

(6) Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question.

(7) Whether litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties.

(8) Whether the judgment claim arising from the foreign action is subject

to equitable subordination under Section 510(c).

(9) Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f).

(10) The interest of judicial economy and the expeditious and economical determination of litigation for the parties.

(11) Whether the foreign proceedings have progressed to the point where the parties are prepared for trial.

(12) The impact of the stay on the parties and the "balance of hurt".

*Id.* at 799–800 (citations omitted).

These factors will be discussed seriatim as they relate to Lakeshore's motion.

■ (1) *Resolution of the Issues.* The issues can be fully resolved either in Arizona state court or by this Court. This Court would have jurisdiction to fully and finally determine the issues under 28 U.S.C. § 157(b)(2)(A), (B), were CLC to object to Lakeshore's Claim No. 22. Moreover, this Court also has a duty to estimate Lakeshore's claim under 11 U.S.C. § 502(c). *See, Bittner v. Borne Chemical Co.,* 691 F.2d 134 (3d Cir.1982). Since ultimate control over Lakeshore's claim would no doubt be of some aid in estimating that claim's worth, this factor favors this Court's determining Lakeshore's claim.

(2) *Lack of Connection with the Bankruptcy Case.* "Congress contemplated that relief from the stay may be appropriate to permit state court adjudication of such matters as divorce, child custody and probate proceedings where such matters bear no relation to the bankruptcy case." *Id.,* 40 B.R. at 804–05. However, unlike those issues, the allowance of a claim is a fundamental bankruptcy issue. Thus, this factor does not support modification of the stay.

(3) *Debtor as a Fiduciary.* This factor is apparently not applicable to this proceeding.

(4) *Another Forum Better Suited to Determination of the Issue.* Lakeshore's state court lawsuit alleges causes of action based on fraud, negligent misrepresentation, breach of contract, breach of express warranties, and violations of the Arizona racketeering laws. With the exception of the racketeering count, these are matters of common law routinely heard in bankruptcy court. There is no reason to suppose that this Court cannot construe Arizona's racketeering laws as well as an Arizona trial court of general jurisdiction. The Court, therefore, concludes that the Arizona court is not better suited to determination of the issues.

(5) *Costs Borne by Insurance Carrier.* CLC does not have insurance which would cover the costs of defending this claim. Thus, the availability of insurance is not a factor which would favor modifying the stay.

(6) *Third Party Liability.* This factor is apparently not applicable to this proceeding.

(7) *Interests of Other Creditors.* The Creditors' Committee vigorously opposes modification of the stay. Were Lakeshore's claim to be liquidated in Arizona, CLC's officers would have to travel there for trial. These administrative expenses could be avoided if Lakeshore's claim were liquidated by this Court, with a resulting savings to the estate which would ultimately benefit the unsecured creditors. Thus, this factor favors retention of the stay.

(8) *Equitable Subordination.* Section 510(b) of the Bankruptcy Code provides that "for the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under Section 502 on account of such a claim, shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such a security is common stock, such claim has the same priority as common stock." Since Lakeshore's claim *appears* to fall squarely within the statutory lan-

guage, the Court concludes that its claim may subordinate to those of the general unsecured creditors and will share, if at all, with the Debtor's equity security holders. Since it is not clear what, if anything, such holders will receive in this bankruptcy, the Court finds that it would be highly wasteful for the estate to incur any additional expense in liquidating such a claim outside this forum. Thus, this factor favors retention of the stay.

(9) *Avoidable Lien.* This factor is apparently not applicable to this proceeding.

(10) *Progress of State Court Action.* While some discovery has been completed, a considerable amount remains to be done before this matter can be fully resolved. Moreover, nothing under the Federal Rules of Civil Procedure or Federal Rules of Evidence precludes Lakeshore from using admissions by CLC in the state court action in an estimation or liquidation proceeding in this Court. Thus, this factor does not support modification of the stay.

(11) *Judicial Economy and Expeditious Determination of the Issues.* Lakeshore alleges that if the stay is modified it will file a "motion to set and certificate of readiness" in the Arizona trial court. By this filing, Lakeshore would state to the Arizona state court that its discovery will be completed in 60 days and that it is ready to have the case put on the court's active calendar. This Court, however, is not aware of the length of time an Arizona case remains on the active calendar before trial is actually had. But this Court can control its own docket and set a Section 502(c) hearing in less than 60 days. Thus, this factor also favors retention of the stay.

(12) *The Balance of Hurt.* As the *Curtis* court stated, "financial hardship to the movants must, of course, be balanced against financial hardship to the debtors. In the absence of some other justification, the court will not shift the financial burden from another party to the debtors. To do so would contravene the fundamental policy in favor of economic administration of debtors' estate." *Id.* at 806 (citations omitted).

Analysis of the foregoing factors leads the Court to conclude that Lakeshore has not shown cause for modifying the stay and that, indeed, the factors favor retention of the stay.

An Order consistent with this Opinion will be entered this date.