**In re CLINTON CENTRIFUGE, INC., Debtor.**

**Bankruptcy No. 86–03950F.**

United States Bankruptcy Court, E.D. Pennsylvania.

Jan. 22, 1988.

Paul B. Maschmeyer, Lashner, Victor & Maschmeyer, Philadelphia, Pa., for movant, Lavin Centrifuge, Inc.

Jonathan H. Ganz, Pincus, Verlin, Bluestine, Hahn & Reich, Philadelphia, Pa., for debtor, Clinton Centrigue, Inc.

## OPINION

BRUCE I. FOX, Bankruptcy Judge:

The movant here seeks a determination that its claim against the debtor is properly treated as a postpetition claim so that the automatic stay does not apply. In the alternative, the movant seeks modification of the automatic stay to allow it to assert its claim against the debtor in state court.

### I.

The movant is Lavin Centrifuge, Inc. ("Lavin Centrifuge") whose request that this chapter 11 bankruptcy case be dismissed was addressed in my opinion set forth in *In re Clinton Centrifuge, Inc.*, 72 B.R. 900 (Bankr.E.D.Pa.1987) *appeal pending*. The relationship between the debtor and the movant was set out in some detail in findings of fact made in connection with my earlier opinion. *Id.* at 901–903. I will reiterate here only such facts as are relevant to resolution of the instant dispute.

The debtor, Clinton Centrifuge, Inc. ("Clinton Centrifuge") is a corporation of which William D. Clinton ("Clinton") is the sole shareholder and chief executive. The

movant, Lavin Centrifuge, is a corporation of which Aaron M. Lavin ("Lavin") is currently the sole shareholder and chief executive. The dispute between the two corporations and their principals arises from actions undertaken by Clinton and Clinton Centrifuge during the period of time from 1980 to 1987 when Clinton was sole shareholder and chief executive of Lavin Centrifuge. More specifically, on April 6, 1983, Clinton caused Lavin Centrifuge to undertake a bulk sale of its assets to Clinton Centrifuge in exchange for $135,787.00 payable in monthly installments over a five year period. *See Clinton Centrifuge* at 902 (Findings of Fact 12–17). Since that date, Lavin has been engaged in an attempt to wrest control of Lavin Centrifuge's stock from Clinton and to regain the former assets of Lavin Centrifuge from Clinton Centrifuge.

Ultimately, Clinton Centrifuge filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on August 21, 1986. Lavin regained the stock of Lavin Centrifuge from Clinton on March 16, 1987 and as sole shareholder elected himself chief executive of the corporation. Lavin Centrifuge then decided to file suit in the Court of Common Pleas for Montgomery County, Pennsylvania on June 12, 1987 against William Clinton and his attorneys on various claims including, *inter alia,* breach of contract and what amounts to waste of the corporate assets of Lavin Centrifuge. Lavin Centrifuge also filed several proofs of claim in this bankruptcy case. Lavin Centrifuge now seeks leave from this court to include the debtor, Clinton Centrifuge, as a defendant in the state court action.[1]

It is undisputed that the acts of the debtor for which the movant would seek redress in state court occurred prepetition. However, in reliance on the Third Circuit's decision in *Matter of M. Frenville Co., Inc.,* 744 F.2d 332 (3rd Cir.1984) *cert. den.,* 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985), movant argues that its inability to bring its claim prepetition because of Clinton's domination of its stock, renders the claim a postpetition claim not subject to the automatic stay. In the alternative, movant contends that principles of judicial economy entitle it to modification of the automatic stay to pursue the debtor in state court.

For the reasons set forth below, I must reject both of the movant's arguments.

## II.

Any attempt to differentiate between pre and post petition claims in this circuit must begin with consideration of *Frenville* and *In re Remington–Rand Corporation,* 836 F.2d 825 (3rd Cir.1988). In *Frenville,* an accounting firm, (A & B) sought indemnification or contribution from a debtor ("the Frenvilles") postpetition on the basis of certain acts of the debtor which had been taken prepetition. The Court of Appeals concluded that the accounting firm's right to indemnification or contribution under New York state law did not arise until the accounting firm was itself sued, an event which occurred postpetition. The court stated:

> In the case at bar, A & B had an unmatured, unliquidated, disputed claim when the banks brought suit against it in New York state court. Until the banks instituted suit, however, A & B did not have any claim or cause of action based on indemnity or contribution against the Frenvilles. Since the banks' suit began some fourteen months after the filing of the Frenvilles' involuntary chapter 7 proceedings, A & B's claim, as well as its cause of action, arose post-petition. Although arguably A & B may have had some claim at the time the Frenvilles gave it allegedly false information, it did not have a claim for indemnification or contribution until the banks filed their suit. Thus, by its very terms, the automatic stay provision of § 362(a) is inapplicable to A & B's suit.

*Frenville* at 337.

▮ As recently stated by the Third Circuit Court of Appeals in *Remington–Rand,*

---

1. Here, the debtor does not seek an injunction under 11 U.S.C. § 105(a) to stay a lawsuit against the debtor's principal. *See generally In re Otero Mills, Inc.,* 21 B.R. 777 (Bankr.D.N.M.), *aff'd* 25 B.R. 1018 (D.N.M.1982).

*Frenville* stands for the proposition that "the existence of a valid claim depends on: (1) whether the claimant possessed a right to payment; and (2) when that right arose." *Remington–Rand* at 830. *See In re Blank, Rome, Comisky & McCauley Asbestos Cases*, 55 B.R. 722 (E.D.Pa.1985) *appeal dismissed*, 800 F.2d 1131 (3rd Cir. 1986); *Matter of Tonty*, 52 B.R. 18 (Bankr. W.D.Pa.1985). *See also Schweitzer v. Consolidated Rail Corp.*, 758 F.2d 936 (3rd Cir.) *cert. denied*, 474 U.S. 864, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985).[2] When, under applicable law, a right to payment does not exist prepetition (contingent, unmatured, disputed or otherwise), there can be no cognizable prepetition claim. *Frenville* at 336–337.[3]

In *Remington–Rand* the court examined a United States government claim for breach of contract to determine whether it arose pre or postpetition. In that case, the breach, if any, occurred prepetition, but the government had not yet performed a statutorily required final audit to determine the existence and amount of the claim. The circuit court held that a prepetition final audit, although a "jurisdictional prerequisite" to judicial resolution of a breach of contract claim, was not a prerequisite to the government's holding a prepetition claim cognizable in bankruptcy. In reaching that determination, the court found that the government's right to payment existed as of the date of Remington–Rand's bankruptcy filing, even though the government had no cause of action pending completion of the necessary audit.

In applying *Frenville* to the facts of *Remington–Rand*, the Court of Appeals focused on the pre-existing legal relationship between the parties which existed by virtue of the government's contractual relationship to Remington–Rand. That issue had been addressed by the court in *Schweitzer*, a case under the railroad reorganization provisions of the former Bankruptcy Act which addressed the issue of the dischargeability of the claims of tort victims whose injuries had not been manifest as of the date of the tortfeasor's discharge in bankruptcy. In *Schweitzer*, the court stated that "before one can have an 'interest' which is cognizable as a contingent claim under section 77 [of the Bankruptcy Act of 1898] one must have a legal relationship relevant to the purported interest from which that interest may flow." *Schweitzer* at 943.[4] Thus, the existence of a legal relationship between the claimant and the debtor is relevant to the first part of the *Frenville* inquiry. *Frenville*, *Schweitzer* and *Remington–Rand* are consistent in holding that a prebankruptcy legal relationship is a prerequisite to the existence of a contingent prepetition claim.[5]

## III.

A right to payment which only comes into being postpetition is not subject to the automatic stay. *Frenville* at 335. *See also In re Clark*, 69 B.R. 885, 890 (Bankr.E.D.Pa.1987), *In re Vacuum Cleaner Corp. of America*, 58 B.R. 101 (Bankr.E.D.Pa.1986).

**2.** Courts in several other circuits have rejected the Frenville reasoning. *See In re Black*, 70 B.R. 645 (Bankr.D.Utah 1986); *In re A.H. Robins Co., Inc.*, 63 B.R. 986 (Bankr.E.D.Va.1986); *In re Johns–Mansville Corp.*, 57 B.R. 680 (Bankr.S.D. N.Y.1986); *Matter of Baldwin–United Corp.*, 48 B.R. 901 (Bankr.S.D.Ohio 1985).

**3.** As stated in *Frenville* at 336 (footnote omitted) At first glance, A & B might be thought to have had an unliquidated, contingent, unmatured and disputed claim prepetition. While all of these adjectives may describe A & B's cause of action against the Frenvilles, the threshold requirement of a claim must first be met—there must be a "right to payment." *See also, Schweitzer* at 943.

**4.** Although the court in Schweitzer was considering the definition of claim found in the Railroad reorganization provisions of the Bankruptcy Act, it implies that it would reach the same result under the definition found in section 101(4) of the code. *Schweitzer* at 943.

**5.** The requisite legal relationship may be based on a contract. *See Remington-Rand; In re Radio–Keith–Orpheum Corporation*, 106 F.2d 22, 26–27 (2d Cir.1939). *See also Frenville* at 336–337. On the other hand, the Third Circuit held in *Schweitzer* and reiterated in *Remington–Rand* that "the tortfeasor-victim" legal relationship arises simultaneously with the existence of a cause of action in tort. *Schweitzer* at 943. *Remington–Rand* at 832.

Here the movant seeks a determination that its right to payment by the debtor existed only postpetition and thus constitutes a postpetition claim. Movant requests what amounts to a declaratory judgment, because of the risk it would run by proceeding on the assumption that its claim arose postpetition. A subsequent determination that its claim arose prepetition would subject the movant to possible sanctions for violating the automatic stay. 11 U.S.C. § 362(h). Because the movant cannot know whether it may proceed against the debtor in state court absent a determination in this forum, declaratory relief is appropriate. *Compare In re Allegheny, Inc.*, 74 B.R. 397, 400–401 (Bankr.W.D.Pa. 1987) (determination on applicability of the automatic stay may be a prerequisite to proceeding against the debtor) *with In re Blank, Rome, Comisky & McCauley Asbestos Cases*, (declaratory judgment not available to determine applicability of the automatic stay).

Lavin Centrifuge concedes, as it must, that its right to payment constituting a claim against the debtor, if any, emerges from actions taken by the debtor prepetition. Clinton Centrifuge took possession of and managed assets claimed by Lavin Centrifuge prepetition. Movant argues, however, that it was entirely precluded from commencing an action against the debtor prepetition because its stock was controlled by William D. Clinton, an individual who is not only the sole shareholder and chief executive of the debtor, but also is a defendant in the action to which they seek to add the debtor as a defendant. Because Clinton controlled Lavin Centrifuge's stock until after Clinton Centrifuge filed bankruptcy, movant contends that it was completely precluded from bringing a prepetition action against the debtor. This preclusion, it argues, prevented its right to payment from being created until after the debtor's bankruptcy petition was filed so that the automatic stay does not apply.

Movant's arguments are implicitly premised on the federally created equitable doc-trine that adverse domination of corporate stock may toll a statute of limitations applicable to a claim which the corporation holds against the party dominating it. *See, Saylor v. Lindsley*, 302 F.Supp. 1174 (S.D.N.Y. 1969). *See also, International Railways of Central America v. United Fruit Co.*, 373 F.2d 408 (2d Cir.1967); *In re REA Express, Inc., Private Treble Damage Antitrust Litigation*, 412 F.Supp. 1239, 1257 n. 45 (E.D.Pa.1976). Movant essentially requests that I determine that Clinton's domination of its stock was adverse so that no cause of action arose until Clinton relinquished control.[6]

Under *Frenville* and *Remington–Rand* as discussed above, the issue to be determined is whether a "right to payment" existed prepetition. Relevant to such determination is whether the potential claimant and the debtor had a prebankruptcy legal relationship. With respect to state law claims, such as those which the movant seeks to assert here against the debtor, "the threshold question of when a right to payment arises absent overriding federal law, 'is to be determined by reference to state law.'" *Frenville* at 332 *citing Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1946).

The movant's initial position is that no cognizable cause of action accrued until Lavin Centrifuge recovered its stock from William Clinton. Movant thus urges me to adopt a standard which equates the date on which a right to payment exists for bankruptcy claims purposes to the date on which a cause of action accrues for purposes of the statute of limitations under state law. I do not believe that such a position is consistent with *Frenville*, or the definition of "claims" found in the bankruptcy code.

The Third Circuit in *Frenville* does not simply equate the creation of a right to payment with creation of a cause of action. *Frenville* recognizes that in many cases,

6. Although I question whether an adequate record was made to support such a finding, my determination that tolling a statute of limita-tions does not render a claim post-petition obviates the need to reach any conclusion on adverse domination.

claims within the meaning of 11 U.S.C. § 101(4) may be contingent, unmatured, unliquidated or disputed. The court specifically points to the example of an indemnity or surety contract, stating: "Such a surety relationship is the classic case of a contingent right to payment under the Code—the right to payment exists as of the signing of the agreement, but it is dependent on the occurrence of a future event." *Frenville* at 336–337. As stated by the court in *Remington–Rand*, "[i]n ascertaining when the government's right to payment arose, we recognize that a party may have a bankruptcy claim and not possess a cause of action on that claim." *Remington–Rand* at 831. *See also Schweitzer*, 758 F.2d at 942.

As the example of a surety contract makes clear, a right to payment within the meaning of the Bankruptcy Code may exist long before any cause of action accrues to enforce that right to payment. This conclusion is entirely consistent with the "very broad" definition of a claim found at 11 U.S.C. § 101(4)[7] *Frenville* at 336.

Even if I were to hold, as movant suggests, that an accrued cause of action is a prerequisite to the existence of a claim, I would be unable to sustain movant's position that it is a postpetition creditor. In the case at bench, Lavin Centrifuge, in fact, possessed fully accrued causes of action against the debtor prepetition, not merely a right to payment. Both the tort claims and the contract claims of Lavin Centrifuge accrued for statute of limitations purposes upon completion of the bulk sale of assets and subsequent alleged mismanagement of those assets by Clinton Centrifuge. As stated by the Third Circuit in *Kucera v. Metropolitan Life Insurance Co.*, 719 F.2d 678 (3rd Cir.1983):

> The rule in Pennsylvania is no different than elsewhere. "[A] cause of action accrues ... when one has the right to institute a suit." *Bell v. Brady*, 346 Pa. 666, 669, 31 A.2d 547, 549 (1943). "A cause of action accrues at the moment the party has a legal right to sue." *Philadelphia, B. & W.R. Co. v. Quaker C.F. M. Co.*, 282 Pa. 362, 367, 127 A. 845, 847 (1925).

Lavin Centrifuge did not bring that claim because its principal, at that time, did not choose to do so. "Whether or not a claim and debt exist does not depend on whether a creditor chooses to pursue its claim." *In re Energy Co-Op, Inc.*, 832 F.2d 997 (7th Cir.1987). That conclusion is fully consistent with both *Frenville* and *Remington–Rand*. The fact that a creditor "chooses" not to make a claim presupposes that the creditor has knowledge of the existence of that claim.

The doctrine of adverse domination, to the extent that it is cognizable in Pennsylvania, merely tolls the statute of limitations. *See Saylor; International Railways*. The fact that a limitations period is tolled prepetition does not negate the existence of the claim prepetition. To hold otherwise would permit an event which tolls a statute of limitations to convert a prepetition claim into a postpetition claim.[8]

### IV.

In the alternative, Lavin Certrifuge seeks relief from the stay arguing only that relief would serve the purposes of

---

7. A claim is defined as

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, dispute, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured;

11 U.S.C. § 101(4).

8. Lavin Centrifuge's protection against losing a claim without an opportunity to participate in the bankruptcy process emerge from its due process rights, *see City of New York v. New York, New Haven and Hartford Railroad Co.*, 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953); *In re Harbor Tank Storage Co.*, 385 F.2d 111 (3rd Cir.1967) and from its right to maintain its claims against William Clinton as a fiduciary. I note that here Lavin Centrifuge has no risk of losing its claims without participating in the bankruptcy because it has filed proofs of claim to protect its interests.

judicial economy. Movant points out that it has instituted suit against William Clinton and others in state court on claims similar to those which it seeks to bring against Clinton Centrifuge. It avers, possibly correctly, that refusal to grant relief may require that similar claims be adjudicated in different forums.

In granting to bankruptcy courts broad discretion in deciding whether to grant relief from the automatic stay established by 11 U.S.C. § 362(a), *see In re Shariyf,* 68 B.R. 604 (E.D.Pa.1986), Congress recognized that, in some instances, it may be appropriate to grant relief to an unsecured creditor in order for that creditor to proceed with state court litigation against the debtor:

> [I]t will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere.

H.R.Rep. 95–595, 95th Cong., 1st Sess. 341 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 50 (1978), U.S.Code Cong. & Admin. News 1978, pp. 5787, 5836, 6297.

Thus, in recognition of this legislative history, some courts have granted relief from the stay in order to permit a matter, which is disrupted on the eve of trial by a bankruptcy filing, to proceed in a nonbankruptcy forum. *See Matter of Holtkamp,* 669 F.2d 505 (7th Cir.1982); *In re Philadelphia Athletic Club, Inc.,* 9 B.R. 280 (Bankr.E.D.Pa.1981).

Movant here contends that judicial economy concerns make it appropriate to grant relief in this instance, and certainly judicial economy can be considered in deciding whether to grant such a motion. *See In re Pro Football Weekly, Inc.,* 60 B.R. 824 (N.D.Ill.1986); *In re CLC of America, Inc.,* 68 B.R. 512 (Bankr.E.D.Mo.1986). However, any benefits that may be achieved by judicial economy must be balanced against policies implicit in the bankruptcy code as well as legitimate interests possessed by the debtor, other creditors, and parties in

interest. *In re Borbridge,* 81 B.R. 332, (Bankr.E.D.Pa.1988).

Among the competing factors to be considered in deciding this motion is the desirability of resolving all claims against the debtor in one forum. As I have previously noted in another context:

> ... courts must be mindful that former section 1471(a), (b) and current section 1334(a), (b) also represent a studied Congressional decision to broaden bankruptcy jurisdiction in order to bring into one forum all matters related to the bankruptcy case "so as to facilitate the administration of bankruptcy cases." *Matter of Krupke,* 57 B.R. [523] at 524 [Bankr. W.D.Wis.1986]; *accord, In re Cemetery Development Corp.,* 59 B.R. [115] at 124 [Bankr.M.D.La.1986].

*In re Earle Industries, Inc.,* 72 B.R. 131, 134 (Bankr.E.D.Pa.1987).

Here, the movant urges only that it desires to bring a postpetition lawsuit (on a prepetition claim) against the debtor similar to a postpetition lawsuit brought against nondebtors. Lavin Centrifuge does not assert that the matter will be expeditiously resolved in state court; it does not argue that the matter was pending prepetition and was about to be heard when the debtor's petition was filed; it does not argue that the debtor is an indispensible party in the pending state court action; nor does it assert that an indemnity or third party defendant action is to be brought against the debtor. *See In re Olmstead,* 608 F.2d 1365 (10th Cir.1979) (indemnity matter should be resolved with the main case); *In re Harris,* 7 B.R. 284 (S.D.Fla. 1980) (same).

On the facts as presented in the matter at bench, the benefits of deciding prepetition claims against the debtor in one forum outweigh any economy that may be derived from granting the motion. Lavin Centrifuge has already filed a proof of claim to which no objection has yet been filed. If no objection is asserted, the claim is deemed allowed. 11 U.S.C. §§ 501, 502. It is possible that there will never be the duplication of litigation that the movant fears. Even if an objection is filed, the

matter can be resolved quickly here. Since the debtor has already proposed a reorganization plan, I am reluctant to grant this motion because the existence of claims litigation in another forum may well slow the administration of this estate.

Finally, the congressional policy of having claims litigation resolved in a bankruptcy forum should only be undercut in narrow circumstances. Otherwise, the potential for creditor forum shopping exists. This is particularly true where, as here, the alleged duplication of trials involve litigation commenced postpetition.

For these reasons, I conclude that Lavin Centrifuge holds a prepetition claim against Clinton Centrifuge. Any dispute concerning that claim will be resolved in this court.

An appropriate order will be entered.

### ORDER

AND NOW, this 22 day of January, 1988, upon consideration,

it is hereby ORDERED that movant has a prepetition claim against the debtor and relief from the automatic stay is DENIED.